Elizabeth Ann POTTS, Individually and as next of kin of Harold Lamar Potts, Deceased, Plaintiff,

v.

The CELOTEX CORPORATION, et al., Defendants.

Civ. No. 3-88-089.

United States District Court, E.D. Tennessee, N.D.

Dec. 6, 1988.

W. Mitchell Cramer, Michael Y. Rowland, Knoxville, Tenn., for plaintiff.

William Vines, Harry Ogden, Patti Jane Lay, Craig Troutman, Hugh B. Bright, Knoxville, Tenn., for defendants.

## MEMORANDUM OPINION

JARVIS, District Judge.

This products liability action was filed by Elizabeth Ann Potts, individually and as next of kin of Harold Lamar Potts, who died on July 16, 1987. [*See* Doc. 1]. In her complaint, Mrs. Potts contends that her husband "developed an asbestos-related illness, mesothelioma" directly and proximately caused by his occupational exposure to asbestos-containing insulation products manufactured, distributed or sold by defendants. [*See id.*]. Jurisdiction is predicated on diversity of citizenship and the amount in controversy exceeding $10,-000.00, *see* 28 U.S.C. § 1332(a), and is not in dispute. This matter is presently before the court on all defendants' motion for summary judgment based upon the one-year statute of limitations set forth in *Tennessee Code Annotated* § 28-3-104. Plaintiff has timely responded and argument was heard on November 9, 1988.

The relevant facts necessary for a determination of this issue are undisputed. On February 5, 1975, Dr. Warren R. Osborne, a staff physician with the Tennessee Valley Authority, advised Mr. Potts that he had "x-ray changes consistent with a diagnosis of pulmonary asbestosis." [*See* Doc. 85A, Ex. B, p. 3]. Mr. Potts was again diagnosed as having asbestosis on January 29, 1987 by Dr. William H. Bedwell and was specifically advised by Dr. Bedwell of that fact on that same day. [*See* Doc. 197, p. 16]. However, neither Mr. Potts nor his wife filed suit for any injuries or damages arising out of his asbestos-related illness, asbestosis. It was not until Mr. Potts was diagnosed as having another asbestos-related disease, mesothelioma, that a lawsuit was filed by the Potts. This lawsuit was filed on February 9, 1988, approximately 11

months after Mr. Potts was diagnosed as having mesothelioma.

Based on these undisputed facts, defendants contend that plaintiff's action is barred by the one-year statute of limitations set forth in *Tennessee Code Annotated* § 28-3-104,* which provides in pertinent part as follows:

(a) Actions ... for injuries to the person ... whether said actions are grounded or based in contract or tort, civil actions for compensatory or punitive damages, or both, ... shall be commenced within one (1) year after cause of action accrued.

(b) For the purpose of this section, insofar as products liability cases are concerned, the cause of action for injury to the person shall accrue on the date of the personal injury, not the date of the negligence or the sale of a product, and in said products liability cases, no person shall be deprived of his right to maintain his cause of action until one (1) year from the date of his injury and under no circumstances shall his cause of action be barred before he sustains an injury.

*Tennessee Code Annotated* § 28-3-104 (1980). Defendants contend that this action is time barred because the Potts were aware of an injury proximately caused by Mr. Potts' asbestos exposure as early as February 5, 1975 and certainly no later than January 29, 1987. Therefore, at the absolute latest, the Potts should have filed within one year of January 29, 1987. Mrs. Potts, on the other hand, contends that she and her late husband were not aware of this particular illness, mesothelioma, until sometime in March, 1987. This action was therefore timely filed on February 9, 1988, a date well within the one-year statute of limitations.

■ Both sides agree that the "discovery rule" or "discovery doctrine" has been adopted by the courts in Tennessee. Under that doctrine, in tort actions, including but not restricted to products liability actions predicated on negligence, strict liability or misrepresentation, the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. *McCroskey v. Bryant Air Conditioning Company,* 524 S.W.2d 487, 491 (Tenn.1975). This facet of the discovery doctrine in Tennessee was "... fashioned to alleviate the intolerable result of barring a cause of action by holding that it 'accrued' before the discovery of the injury or the wrong." *Foster v. Harris,* 633 S.W.2d 304, 305 (Tenn.1982). In addition to requiring an injury or wrong, the discovery rule in Tennessee requires the discovery of the existence of a right of action, *i.e.,* facts which would support an action for tort against the tortfeasor—these facts include not only the existence of an injury, but the tortious origin of the injury. *Hathaway v. Middle Tennessee Anesthesiology, P.C.,* 724 S.W.2d 355, 359 (Tenn.Ct.App.1986).

In this case, plaintiff argues that her theory of recovery is completely compatible with the Tennessee discovery rule. In particular, plaintiff contends that the decedent did not discover the injury out of which this lawsuit arose, mesothelioma, until March, 1987. Thus, this action, commenced on February 9, 1987 was filed within a year from the discovery of this particular injury. Defendants, of course, respond that both prongs of the discovery rule were fully satisfied by February 5, 1975 at the earliest and by January 29, 1987 at the latest. At either of these times, the Potts were aware of both an injury—asbestosis—and the alleged origin of that injury—exposure to defendants' asbestos-containing products. In turn, plaintiff emphasizes that she is not suing for asbestosis since the statute of limitations has long run on that cause of action; rather, she is suing for damages as a result of her late husband's mesothelio-

---

* Because jurisdiction in this case is based upon diversity, the court must look to Tennessee law to determine both the applicable statute of limitations and the time at which this claim accrued thereunder. *See Ragan v. Merchants Transfer and Warehouse Company,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); *see also International Harvester Credit Corporation v. Hill,* 496 F.Supp. 329, 332 (M.D.Tenn.1979).

ma, which was not diagnosed until sometime in March of 1987.

■ In support of her proposition, plaintiff has filed the affidavits of Drs. William Bedwell and Victor Roggli. Both doctors testify that mesothelioma and asbestosis are "two distinct diseases." [*See* Attachments to Doc. 185]. Based on this testimony, plaintiff contends that she has a separate cause of action and a separate one-year limitations window for each medically "distinct" injury caused by defendants' wrongful conduct. Therefore, the precise issue before this court is whether Tennessee law allows the one-year statute of limitations to begin to run anew for each successive injury caused by the same wrongful act. Although plaintiff's position might have merit from a medical standpoint, the court finds that there is no legal basis in Tennessee to support her proposition.

The court's conclusion is amply supported by Tennessee case law and may best be summarized by the Tennessee Supreme Court as follows:

A single tort can be the foundation for but one claim for damages.... All damages which can *by any possibility* result from a single tort form an indivisible cause of action. Every cause of action in tort consists of two parts, to wit, the unlawful act, and all damages that can arise from it. (emphasis added).

*National Cordova Corporation v. City of Memphis,* 214 Tenn. 371, 380 S.W.2d 793, 797 (1964) (*quoting Johnston v. Southern Railway Company,* 155 Tenn. 639, 643, 299 S.W. 785, 786 (1927)). *See also Simpson v. Allied Van Lines, Inc.,* 612 S.W.2d 172, 178 (Tenn.App.1980); *United Services Automobile Association v. Hartford Accident & Indemnity Company,* 220 Tenn. 120, 414 S.W.2d 836 (1967); *Globe & Rutgers Fire Insurance Company v. Cleveland,* 162 Tenn. 83, 34 S.W.2d 1059 (1931). It is difficult to envision how the Tennessee Supreme Court could have stated the rule with any more clarity. This rule prevents a plaintiff from dividing various injuries or damages into more than one cause of action. This rule has been reinforced by more recent decisions of the Tennessee

courts which have held that a plaintiff cannot wait until he knows of all of the injurious effects or consequences of an actionable wrong before filing suit. *Security Bank and Trust Company v. Fabricating, Inc.,* 673 S.W.2d 860 (Tenn.1983); *Taylor v. Clayton Mobile Homes, Inc.,* 516 S.W.2d 72 (Tenn.1974). In *Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1974), the seminal case on the discovery rule in Tennessee, Justice Harbison, concurring, wrote:

As stated in the principal opinion, the rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action. It does not, in my opinion, permit a plaintiff to wait until he knows all of the injurious effects or consequences of a tortious act. The statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry.

*Id.* at 518 (citations omitted). In the instant case, the statute of limitations was not tolled until March, 1987 because the Potts were cognizant of a wrong on both February 5, 1975 and January 29, 1987.

A quite common, yet extremely pertinent, example of the practical application of this rule is present in many orthopedic cases in which it is not uncommon for a doctor to opine that the plaintiff is at an increased risk of developing arthritis or even cancer as a result of the injury. Nevertheless, unless the doctor can state with a reasonable degree of medical certainty that the plaintiff will probably develop arthritis or cancer, plaintiff cannot recover for those potential injuries in his case for the orthopedic injuries. *See, e.g., Maryland Casualty Company v. Young,* 211 Tenn. 1, 362 S.W.2d 241 (1962). The court is aware of no Tennessee decision which would allow plaintiff a second cause of action if he should later develop arthritis or cancer. Under Tennessee law, therefore, the instant case can be treated no differently.

A more recent example of the "single injury" rule in Tennessee is found in *Bea-*

*man v. Schwartz*, 738 S.W.2d 632 (Tenn.Ct. App.1986) (perm. denied 1987). In *Beaman*, plaintiff purchased a set of extended wear contact lenses from defendant. On August 16, 1983, she developed a pain in her left eye and visited the defendant doctor on that same day. At that time, the doctor advised her that she had a corneal abrasion. As a result, plaintiff was hospitalized on August 23, 1983 with a suspected infection, which was subsequently confirmed on August 28, 1983. Plaintiff brought suit on August 20, 1984. The trial court granted defendant's motion for summary judgment and the Court of Appeals affirmed, holding that the statute of limitations began to run when plaintiff was advised on August 16, 1983 that she had a corneal abrasion. In so ruling, the court stated:

> A suit for personal injury can be brought more than one year after the injury occurs, provided it is brought in one year after it is discovered or in the exercise of reasonable care and diligence should have been discovered. Mrs. Beaman knew she had an eye injury on the morning of August 16, 1983.
>
> Plaintiff argues the injury for which she is suing is the corneal infection, not the corneal abrasion. In Tennessee, however, an injured party is not allowed to wait to bring an action until he knows all of the injurious effects or consequences of an actionable wrong. We agree with the trial court that the statute of limitations bars the Plaintiff's suit against CooperVision.

738 S.W.2d at 634 (citations omitted).

Plaintiff in the instant case, however, distinguishes her case from *Beaman* because the corneal infection in *Beaman* was the sequela of the corneal abrasion, whereas Mr. Potts' mesothelioma was not the sequela of asbestosis. Rather, in the words of two of plaintiff's expert witnesses, mesothelioma and asbestosis are "distinct diseases," [*see* Attachments to Doc. 185], or as more fully explained by Dr. Bedwell:

> It is not necessary for a person to have asbestosis for them to later contract mesothelioma. Further, because a person may have asbestosis does not mean that he will contract mesothelioma. That is to say that one disease does not arise out of the other.

[*See* Affidavit of Dr. Bedwell, attached to Doc. 185, p. 2]. While the court finds some merit in distinguishing diseases for purposes of tolling the statute of limitations on the basis of whether one disease is the sequela of another disease, there is simply no basis in Tennessee case law to support the utilization of such a dividing line.

The court would also note that the Fourth Circuit Court of Appeals faced virtually the same issue as is presently before this court. In *Joyce v. A.C. and S., Inc.*, 785 F.2d 1200 (4th Cir.1986), plaintiff was diagnosed as having pleural thickening in one lung as early as 1970. It was not until 1981, however, that plaintiff was diagnosed as having symptoms of pleural effusion and parenchymal asbestosis. The issue before the court was whether Virginia's two-year statute of limitations began running at the time of the development of plaintiff's pleural thickening or at the time of his effusions and parenchymal asbestosis. The Fourth Circuit determined that, under the law of Virginia which adheres to a single indivisible cause of action rule (like Tennessee), plaintiff's cause of action against the manufacturer accrued when he first developed pleural thickening sometime prior to 1970. In so ruling, the Fourth Circuit focused on the fact that the statute of limitations is triggered when the plaintiff develops an injury and not for each individual manifestation of that injury. *Id.*, at 1205.

In summary, the court finds that plaintiff in the instant case makes an appealing argument that a judicial exception for asbestos-related cases should be carved out because of the gaps which occur between the onset of various distinct injuries caused by exposure to asbestos. The court, however, is bound to follow the law of Tennessee, even if it produces a harsh result in this case. The court further recognizes that this "single injury" rule may effectively preclude recovery for serious asbestos-related injuries that develop many years

after an initial hurt, however slight, given the peculiar difficulty of proving future damages in many asbestos cases when plaintiff's doctors cannot testify with a reasonable degree of medical certainty as to whether a particular plaintiff will contract an asbestos-related cancer in the future. *See, e.g., Maryland Casualty Company,* 362 S.W.2d 241. However, the court finds no legal basis in Tennessee for distinguishing between asbestosis and mesothelioma for purposes of tolling the statute of limitations. Finally, if plaintiffs in asbestos exposure cases are to be afforded the opportunity to "wait and see" if a more serious illness develops after they are initially diagnosed as having, for example, pleural thickening or asbestosis, then this change in the law must come from the Supreme Court of Tennessee or the Tennessee General Assembly. It is not a change which this court is allowed to make.

Therefore, the court is constrained to grant defendants' motion for summary judgment based on the statute of limitations and to dismiss this case.

Order accordingly.