Elizabeth Ann POTTS, individually and
as next of kin of Harold Lamar Potts,
Deceased, Plaintiff–Petitioner,

v.

The CELOTEX CORPORATION, et al.,
Defendants–Respondents.

Supreme Court of Tennessee,
at Nashville.

Sept. 10, 1990.

W. Mitchell Cramer, Michael Y. Rowland, and Robert B. Williamson (of counsel), for plaintiff-petitioner.

W. Kyle Carpenter, Michael B. Kinnard, Cynthia K. Mancebo, Harry P. Ogden, Dennis L. Babb and G. Kevin Hardin, Knoxville, for defendants-respondents.

## OPINION

DAUGHTREY, Justice.

This products liability case is before us on certification from the United States Court of Appeals for the Sixth Circuit, pursuant to Tennessee Supreme Court Rule 23. The matter was appealed to the Sixth Circuit following the federal district court's decision in *Potts v. Celotex*, 703 F.Supp. 672 (E.D.Tenn.1988).

We are asked, in essence, to decide whether an earlier manifestation of an asbestos-related disease (asbestosis) triggered the running of Tennessee's one-year statute of limitations on a separate, distinct, and later-manifested disease (mesothelioma) that was also caused by exposure to asbestos.[1] We hold that a cause of action for a separate and distinct asbestos-related disease does not accrue, under TCA § 28–3–104, until that disease becomes manifest.

## I. BACKGROUND

### A. *The Facts*

A full recitation of the facts, largely undisputed in this case, appears in the district court's opinion at 703 F.Supp. 672–73. Briefly summarized, they are as follows:

The petitioner's husband, Harold Lamar Potts, was employed as an insulation worker from 1953 until early 1987. During this time he was exposed to asbestos. On February 5, 1975, he was tentatively diagnosed as having the asbestos-related disease of pulmonary asbestosis. He experienced no symptoms for more than a decade, but then began to suffer pain in his neck, shoulder, and lower back, for which he visited a physician on January 29, 1987. At that time, the diagnosis of asbestosis was confirmed. In March, 1987, while receiving medical care for asbestosis, Mr. Potts was diagnosed as having malignant mesothelioma, another asbestos-related disease. On July 16, 1987, Mr. Potts died as a result of mesothelioma. On February 9, 1988, the petitioner filed her complaint in this diversity action seeking damages arising from her husband's mesothelioma. No recovery is sought for any damages arising from Mr. Potts's asbestosis.

According to the medical evidence in this case, asbestosis and mesothelioma are two independent, distinct and separate diseases, related only by the fact that each is caused by exposure to asbestos fibers. Asbestosis is a pneumoconiosis,[2] causing a fibrous condition or scarring of the lungs. Mesothelioma is an extremely virulent cancer of the epithelium, the thin membrane that lines the lungs, chest and abdominal cavities. A person may have asbestosis without ever contracting mesothelioma and, conversely, may contract mesothelioma without ever having had asbestosis. In the words of Dr. Bedwell, one of petitioner's medical experts, "one disease does not arise out of the other." A study in the New England Journal of Medicine estimates that only 15% of asbestosis sufferers later contract pleural mesothelioma and only 12% contract peritoneal mesothelioma. Selikoff, Churg & Hammond, *Relation between Exposure to Asbestos and Mesothelioma*, 272 New Eng.J.Med. 560, 562 (1965).

---

1. The three related questions certified by the Sixth Circuit Court of Appeals are set out below, in Section III of the opinion, together with this court's specific responses.

2. Pneumoconiosis is "a condition characterized by permanent deposition of substantial amounts of particulate matter in the lungs." *Dorland's Illustrated Medical Dictionary* 1037 (26th Ed. 1985). When asbestos fibers are deposited in the lung, the body apparently produces scar tissue around the foreign matter, in an effort to wall it off. This action produces pulmonary asbestosis. A similar development in the chest cavity, outside the lung, produces "pleural thickening" or pleural asbestosis, a separate form of the disease. Neither form of asbestosis is malignant, although it does affect lung-function. *Sheppard v. A.C. & S. Co.*, 498 A.2d 1126, 1128, n. 3 (Del.Super.Ct.1985), *aff'd sub nom., Keene Corp. v. Sheppard*, 503 A.2d 192 (Del.1986).

## B. *The District Court's Ruling*

The Federal district court granted summary judgment in favor of the respondents (collectively, "Celotex"). They are manufacturers, distributors, and sellers of certain asbestos insulation products with which Mr. Potts came into contact during his employment. The district court properly applied Tennessee's "discovery doctrine," which prevents the running of the statute of limitations in a products liability case until a latent injury is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. But, citing the Tennessee rule that "[a]ll damages which can by any possibility arise from a single tort form an indivisible cause of action," *National Cordova Corp. v. City of Memphis*, 214 Tenn. 371, 380 S.W.2d 793 (1964), the district court also held that the statute of limitations was triggered in this case in February 1975, when Mr. Potts's asbestosis was first diagnosed. The logical result, if the "indivisible cause of action" rule applies, is that any action to recover damages for the mesothelioma was barred by the statute of limitations more than 10 years before the condition that killed Mr. Potts was discovered—indeed, a decade before it ever came into existence. We conclude that the "indivisible cause of action" rule, or what the parties refer to as the "single injury rule," does not apply to these facts.

## II. DISCUSSION

### A. *The Statute*

Tennessee's applicable statute of limitations, TCA § 28–3–104 provides in pertinent part:

> (a) Actions ... for injuries to the person ... shall be commenced within one (1) year after cause of action accrued.
>
> (b) For the purpose of this section, insofar as products liability cases are concerned, the cause of action for injury to the person shall accrue on the date of the personal injury, not the date of the negligence or the sale of a product, and in said products liability cases no person shall be deprived of his right to maintain his cause of action until one (1) year from the date of his injury, and under no circumstances shall his cause of action be barred before he sustains an injury.

### B. *The Issue*

The primary question presented by this case is when the one-year statute of limitations contained in TCA § 28–3–104 began to run. If, as the district court held, the statute began to run upon the diagnosis of Mr. Potts's asbestosis, the action is barred. If it began to run upon the diagnosis of mesothelioma, the action was timely. The problems here arise from the conflict between the theories underlying the "discovery rule," adopted by this Court for determining when a cause of action accrues and the statute of limitations begins to run, and those supporting the so-called "single injury rule," derived from the principle that one tortious act gives rise to but one indivisible claim for damages.[3]

### C. *Tennessee Law*

Under the "discovery rule" applicable in tort actions, including but not restricted to products liability actions predicated on negligence, strict liability or misrepresentation, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn.1975); *see also Teeters v. Currey*, 518 S.W.2d 512 (Tenn.1974). The discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he had a right of action. Furthermore, the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had

---

**3.** This label is not found in Tennessee cases, which formulate the rule instead as a negative— that "[a] plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong." *Securi-* *ty Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 864–65 (Tenn.1983), *cert. denied sub nom. Podrog v. Waring, Cox, James, Sklar and Allen,* 469 U.S. 1038, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984).

occurred and, as a reasonable person, was not put on inquiry. *Hoffman v. Hospital Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983).

■ The rule is grounded in "reason, logic and fundamental fairness." *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d at 489. First of all, the rule responds to the unfairness of requiring a plaintiff to file suit prior to his knowledge of an injury, "requiring that he sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable." *Teeters v. Currey*, 518 S.W.2d at 515. Second, a cause of action in tort does not exist until a judicial remedy is available to the plaintiff. Before a judicial remedy exists, two elements must coalesce: (1) a breach of some legally recognized duty owed by the defendant to the plaintiff and (2) some legally cognizable damage caused to the plaintiff by the breach of duty. *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn.1982).

■ Tennessee law also requires that, to recover for future effects of an injury, the future effects must be shown to be reasonably certain and not a mere likelihood or possibility and that, before a plaintiff may recover for potential injuries, there must be a reasonable degree of medical certainty that the plaintiff will develop a disease in the future as a result of an injury. *See Maryland Casualty Co. v. Young*, 211 Tenn. 1, 6, 362 S.W.2d 241, 243 (1962); *Williams v. Daniels*, 48 Tenn.App. 112, 121–122, 344 S.W.2d 555, 559 (1960). In this case, had the petitioner's decedent brought a timely action for damages based upon his asbestosis, in light of the proof that only a small percentage of those persons who suffer from asbestosis will contract some form of mesothelioma, it is unlikely that there could have been recovery for damages caused by any future cancer or increased risk of cancer. *See, e.g., Herber v. Johns–Manville Corp.*, 785 F.2d 79 (3d Cir.1986); *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517 (Fla.Dist.Ct.App. 1985); *Devlin v. Johns–Manville Corp.*, 202 N.J. Super. 556, 495 A.2d 495 (1985). *See also Daniels v. Combustion Engineering, Inc.*, 583 S.W.2d 768, 770 (Tenn.App.

1978), in which the court held that where, in the absence of presently existing cancer, a plaintiff suffers only from asbestosis, evidence of any association between asbestosis and cancer is inadmissible as irrelevant and serves only to prejudice the jury. Mesothelioma and asbestosis are distinct and separate diseases, unrelated one to the other, and mesothelioma is in no way a reasonably certain consequence of asbestosis. The Court of Appeals therefore held that no judicial remedy was available to the petitioner and her husband until the mesothelioma manifested itself, *i.e.*, was discovered or should have been discovered by them.

Celotex argues, however, that even though Tennessee has adopted the discovery rule, this does not allow a plaintiff to wait until he or she knows all the injurious effects or consequences of an actionable wrong before filing suit. *See Chambers v. Dillow*, 713 S.W.2d 896, 898 (Tenn. 1986); *Security Bank and Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 864–865 (Tenn.1983), *cert. denied sub nom., Podrog v. Waring, Cox, James, Sklar and Allen*, 469 U.S. 1038, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984); *Bennett v. Hardison*, 746 S.W.2d 713 (Tenn.App.1987); *National Mortgage Co. v. Washington*, 744 S.W.2d 574, 579 (Tenn.App.1987); *Memphis Aero Corp. v. Swain*, 732 S.W.2d 608, 611–612 (Tenn.App. 1986); *see also Teeters v. Currey*, 518 S.W.2d 512, 518 (Tenn.1974) (Harbison, J., concurring). This principle, like the discovery rule, is grounded in considerations of reasonableness and fairness. Once a plaintiff is aware of both the breach of duty and the existence of an injury resulting from that breach, the interest in ensuring repose may begin to weigh more heavily. *See LeBeau v. Dimig*, 446 N.W.2d 800, 802–803 (Iowa 1989); *Jones v. Trustees of Bethany College*, 351 S.E.2d 183, 186 (W.Va.1986). Precluding the action in the present case would be consistent with the purposes of the statute of limitations: to prevent undue delay in bringing suits on claims, and to give defendants notice to preserve their evidence before facts are obscured by the lapse of time or the defective memory or death of a witness. *Hack-*

worth v. Ralston Purina Co., 214 Tenn. 506, 509, 381 S.W.2d 292, 294 (1964); Gamble v. Hospital Corp of America, 676 S.W.2d 340, 343 (Tenn.App.1984).

■ Like the discovery rule, the policy favoring indivisible claims (the "single injury rule") is also a logical extension of basic legal principles, primarily those underlying the doctrine of res judicata.

> A single tort can be the foundation for but one claim for damages. * * * All damages which can by any possibility result from a single tort form an indivisible cause of action. Every cause of action in tort consists of two parts, to wit, the unlawful act, and all damages that can arise from it. For damages alone no action can be permitted. Hence, if a recovery has once been had for the unlawful act, no subsequent suit can be maintained.
>
> *    *    *    *    *    *
>
> [I]f the plaintiff, suing for damages for injuries resulting from a single tort, does not include in his suit all the injuries sustained, a subsequent suit for those omitted will be barred upon a plea of res adjudicata aptly pleaded. This follows naturally from the conclusion that the recovery is for the tort, and not for the injuries. If 'a single tort can be the foundation for but one claim for damages,' it [in]evitably follows that there can be but one suit to recover for injuries resulting from that tort.

National Cordova Corporation v. City of Memphis, 214 Tenn. 371, 380–381, 380 S.W.2d 793, 797 (1964), quoting Johnston v. Southern Ry. Co., 155 Tenn. 639, 643, 299 S.W. 785, 786 (1927).[4]

Under this rationale, recovery is for the tort, not for the injuries. There is but one suit to recover for any injuries resulting from that tort. In the present case, Celotex argues that once the asbestosis was diagnosed, the petitioner's husband was aware of both an actionable wrong committed by the respondents and the injurious effect of that wrong. Under this analysis,

a legal remedy was thus recoverable for the tort, the action accrued and the statute of limitations began to run. Hence, Celotex insists, permitting the present action to proceed would in effect allow the petitioner to split an indivisible cause of action.

In its order of certification, the Sixth Circuit Court of Appeals cites the cases of Foster v. Harris, 633 S.W.2d 304 (Tenn. 1982), and Beaman v. Schwartz, 738 S.W.2d 632 (Tenn.App.1986), and implies that they represent lines of authority which prevent the Court of Appeals from fairly determining whether this Court would apply the "single injury rule" to the facts in this case. We conclude that both cases are distinguishable.

Foster v. Harris involves application of the discovery rule to facts which are in some respects the reverse of those in the present case. There, the plaintiff learned that he was suffering from the disease of hepatitis before he learned what had caused it. In fact, he had been infected by his dentist when the dentist, who was suffering from hepatitis, cut both himself and the plaintiff during a dental procedure, thus allowing their blood to intermingle. This court held that the statute of limitations did not begin to run until the plaintiff learned that his hepatitis was caused by the defendant's negligent act. 633 S.W.2d at 305. It remained silent on the issue posed in this cause, that is, whether the plaintiff's knowledge of the defendant's tortious conduct, manifested by some small harm to the plaintiff, precluded application of the discovery rule to the later manifestation of a greater harm resulting from the same act.

Beaman v. Schwartz does address this issue, however. There the plaintiff suffered a corneal abrasion when she left her extended-wear contact lenses in her eyes overnight. The abrasion did not heal and it was discovered that the plaintiff had contracted psuedomonas aeruginosa, an eye infection. The Court of Appeals held that the statute of limitations ran from the time the plaintiff discovered the corneal abra-

---

**4.** It should be noted, however, that considerations of res judicata are not directly involved in the present case, because no prior action has been filed.

sion, not from the date she learned of the infection, despite plaintiff's arguments that she was suing for the injury of the infection and not the abrasion. 738 S.W.2d at 634. The analysis in *Beaman v. Schwartz* would be persuasive in the present context, were it not for one essential difference between the two cases: in *Beaman v. Schwartz*, as in *Foster v. Harris*, the plaintiff suffered a single traumatic injury. By contrast, the plaintiff's decedent in this case was the victim of a continuing tort that resulted in a latent "creeping" disease. As have a majority of the other courts that have considered this question, we hold that the statute of limitations does not begin to run until such a condition is discovered, or until it reasonably could have been discovered, by the injured party.

### D. *Authority in Other Jurisdictions*

The great majority of other jurisdictions would hold that the statute of limitations in the present case began to run with the discovery of the decedent's mesothelioma. *See, e.g., Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C.Cir.1982); *Fearson v. Johns–Manville Sales Corp.*, 525 F.Supp. 671 (D.D.C.1981); *Sheppard v. A.C. & S. Co.*, 498 A.2d 1126, 1132–1134 (Del.Super.1986); *VaSalle v. Celotex Corp.*, 161 Ill.App.3d 808, 113 Ill.Dec. 699, 515 N.E.2d 684 (1987); *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517 (Fla. Dist.Ct.App.1985); *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 230–234, 492 A.2d 1286, 1294–1296 (1985); *Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 315–319, 399 N.W.2d 1, 7–9 (1986); *see also In re Moorenovich*, 634 F.Supp. 634, 637 (D.Me.1986) (dictum); *Devlin v. Johns–Manville Corp.*, 202 N.J.Super. 556, 565–568, 495 A.2d 495, 500–502 (1985) (concomitantly recognizing right to sue if future risk of cancer came to fruition); *see also Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 574–575 (3d Cir.1976), *cert. denied, Mead Johnson Co. v. Goodman*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) (thrombophlebitis and cancer caused by same drug); *Martinez–Ferrer v. Richardson–Merrell, Inc.*, 105 Cal.App.3d 316, 164 Cal.Rptr. 591 (1980) (acute allergic reactions and cataracts caused by drug); *cf. Anderson v. Sybron Corp.*, 165 Ga.App. 566, 567–568, 353 S.E.2d 816, 817–818, *aff'd* 251 Ga. 593, 310 S.E.2d 232 (1983) (claim for cataracts allowed after plaintiff experienced other illnesses caused by exposure to same gas, upon theory of a continuing tort). *See generally* Annotation, "When Statute of Limitations Begins to Run as to Cause of Action for Development of Latent Industrial or Occupational Disease," 1 A.L.R. 4th 117 (1980).

The rationale given for these decisions is that in latent disease cases, the interest of the community to "compensate persons for injuries occasioned by the tortious acts of others ... would be significantly undermined by a judge-made rule that upon manifestation of any harm, the injured party must then, if ever, sue for all harms the same exposure may (or may not) occasion sometime in the future." *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 119 (D.C.Cir.1982). Under the rule that recovery of damages based on future consequences may be had only if such consequences are reasonably certain, there could never be recovery for a second, distinct latent disease whose occurrence is not reasonably certain, unless a lawsuit is filed within the statutory period after the asbestosis is diagnosed and the cancer becomes manifest during that time. *Wilson*, 684 F.2d at 120; *see also VaSalle v. Celotex*, 161 Ill.App.3d 808, 812–813, 113 Ill.Dec. 699, 702, 515 N.E.2d 684, 687 (1987); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 665–666, 464 A.2d 1020, 1026 (1983).

Concern for judicial economy also influences these decisions. If the rule required that the statute run upon the manifestation of an initial illness and the patient learns that another serious disease may later manifest itself but that a remedy in court will be barred unless an anticipatory action is filed, there will be "a powerful incentive to go to court," and to delay the progress of the action until "the full story" of the plaintiff's condition is known. *Wilson*, 684 F.2d at 120; *see also Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517, 521–523

(Fla.Dist.Ct.App.1985). Also, in latent disease cases, evidence tends to improve over the course of time, with evidence as to the existence of the disease, its proximate cause, and resultant damages developing rather than disappearing. *Wilson,* 684 F.2d at 119. Furthermore, even if the reasonable-certainty rule did not preclude recovery for a separate latent disease, the risk would be that a plaintiff who in fact sustained later harm would be under-compensated, while those who did not contract the disease would receive a windfall. *Wilson,* 684 F.2d at 119–120, nn. 44, 45.

A few jurisdictions have held that the statute begins to run from the manifestation of the initial illness. *See Joyce v. A.C. & S., Inc.,* 785 F.2d 1200 (4th Cir.1986); *Matthews v. Celotex Corp.,* 569 F.Supp. 1539 (D.N.D.1983); *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 148–149, 471 A.2d 493, 506–507 (1984); *Pecorino v. Raymark Industries, Inc.,* 763 S.W.2d 561 (Tex.App.1988). They are generally based upon the principles argued by the present respondents, i.e., that once an injury is sustained in consequence of the wrongful or negligent act of another, the law affords a remedy and the statute of limitations begins to run. The courts in these cases were persuaded that allowing an action on the later-manifested disease would violate the rule against splitting a cause of action. *See Joyce v. A.C. & S., Inc.,* 785 F.2d at 1204–1205; *Pecorino v. Raymark Industries, Inc.,* 763 S.W.2d at 569, 571–574.

In the present case, Celotex also cites *LeBeau v. Dimig,* 446 N.W.2d 800 (Iowa 1989), and *Jones v. Trustees of Bethany College,* 351 S.E.2d 183 (W.Va.1986), as authority for their position. While the theories underlying the decisions in these cases are generally applicable to the present case, both *LeBeau* and *Jones* involve a traumatic event/latent manifestation situation, which the courts have distinguished from cases like the present one, which are often called "pure latent" injury or "creeping disease" cases. *See LeBeau v. Dimig,* 446 N.W.2d at 802; *see also Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 230–231 (5th Cir.1984). In these cases, at the time of the traumatic event, the plaintiff realized both that he was injured and what was responsible for causing the injury. *LeBeau v. Dimig,* 446 N.W.2d at 802. That is not the situation before us in this case, and we therefore decline to follow *LeBeau* and *Jones.*

## III. CONCLUSION

■ This case poses a choice between two competing public policies. It is generally recognized "that statutes of limitations are statutes of repose designed to promote stability ... and to avoid the uncertainties and burdens inherent in defending stale claims." *Teeters v. Currey,* 518 S.W.2d 512, 515 (Tenn.1974). But these justifications are grounded "in necessity and convenience rather than in logic ... [and] represent expedients rather than principles." *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). Moreover, "a potential defendant's interest in repose [may be] counterbalanced and out-weighed by other factors, including evidentiary considerations, securing fair compensation for serious harm, and deterring uneconomical anticipatory lawsuits." *Wilson v. Johns–Manville Sales Corp.,* 684 F.2d 111, 120 (D.C.Cir. 1982). Those factors, we conclude, are controlling in this case. We therefore hold that the statute of limitations does not bar recovery in this case, because the decedent's cause of action for mesothelioma did not "accrue" under TCA § 28–3–104 until that condition was diagnosed, or reasonably could have been diagnosed—an event that occurred less than one year prior to the filing of the lawsuit in this case. We reach this conclusion despite testimony that the decedent's initial injury through exposure to asbestos occurred many years prior to the development of his mesothelioma.

In extending Tennessee's discovery rule to fit the facts before us, we do no more than adhere to the policy recognized at the inception of that rule. In *Teeters v. Currey,* 518 S.W.2d at 515, the late Justice Henry, writing for the court, declined "to embrace a rule of law requiring that a plaintiff file suit prior to knowledge of his

injury or, phrasing it another way, requiring that he sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable." Instead, the court recognized that "the public policy of our state is opposed to requiring that suit be filed when circumstances totally beyond the control of the injured party make it impossible for him to bring suit." *Id.*

It would be unreasonable and unfair to allow the manifestation of one disease caused by exposure to asbestos to preclude recovery for a second, unrelated disease also caused by exposure to asbestos. This is particularly true where the second disease could not have been predicted with enough reasonable medical certainty upon the occurrence of the first to allow a legal remedy for the second if an action had been filed to recover damages resulting from the first disease *and* where the defendant had no notice of when the injury actually occurred, over a long period of exposure, as contrasted with the "traumatic event/latent manifestation" cases. Hence, the policy reasons supporting the application of the discovery rule in this case clearly outweigh those supporting application of the "single injury rule".

We therefore answer the questions certified by the Sixth Circuit Court of Appeals in this case as follows:

> Whether the one-year statute of limitations set forth in Tennessee Code Annotated § 28–3–104 bars plaintiff's distinct claim for damages due to mesothelioma when plaintiff discovered a separate, distinct, and independent asbestos-related disease, asbestosis, several years prior to filing the action for mesothelioma injuries. *No*, it does not.
>
> Whether discovery of a separate, independent, and distinct disease related to asbestos constitutes discovery of other separate, independent, distinct, and latent asbestos-related diseases. *No*, it does not.
>
> Whether the single-injury rule applies to cases involving two distinct asbestos-related diseases, particularly where the one alleged to have caused the claimed injuries remained latent and is not dependent

on first contracting the other disease, which the claimant knew about prior to contracting the latent disease, in order to manifest itself. *No*, it does not.

The clerk is directed to transmit this opinion to the United States Court of Appeals for the Sixth Circuit. The costs in this court will be taxed to the respondents.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.