IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 19, 2006 Session

## BOBBY L. HOLLAND and wife, RITA HOLLAND v. AMELIA JO DINWIDDIE, DDS d/b/a JO DINWIDDIE, DDS

**Direct Appeal from the Circuit Court for Benton County**
**No. 05CCV-998      Julian P. Guinn, Judge**

**No. W2006-00523-COA-R3-CV - December 27, 2006**

The plaintiff patient visited the defendant dentist periodically between 1998 and 2003. Between 2001 and 2003, the defendant performed dental work on the plaintiff including root canals, fillings, and crown work. Over this period, the plaintiff's dental condition became significantly worse. The plaintiff developed abscesses and infection in his mouth and suffered from substantial dental pain. The plaintiff's last visit to the defendant was in October of 2003. Over the 2003 holidays, the plaintiff unsuccessfully attempted to contact the defendant for relief from his increasingly painful condition. The plaintiff ultimately received treatment from another dentist throughout 2004. After receiving the plaintiff's dental records from the defendant in October of 2004, the treating dentist informed the plaintiff that the defendant's treatment had been negligent. The plaintiff filed a dental malpractice action against the defendant on January 12, 2005. The trial court granted the defendant's motion for summary judgment based on the one-year statute of limitations for medical malpractice claims, finding that the plaintiff should have discovered the injury by the time of the plaintiff's last visit to the defendant in October of 2003. The plaintiff filed a timely notice of appeal. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Dixie W. Cooper and Catherine Corless, of Nashville, Tennessee, for the Appellants

W. Scott Sims, of Nashville, Tennessee, for the Appellee.

# OPINION

## I. FACTS AND PROCEDURAL HISTORY

This is an appeal from a dental malpractice case that the trial court dismissed on the defendant's motion for summary judgment. The plaintiff Bobby Holland ("Holland" or "Appellant") received dental care periodically from the defendant Amelia Jo Dinwiddie ("Dr. Dinwiddie" or "Appellee") in Camden, Tennessee, between the years of 1998 and 2003. Holland's first series of visits to Dr. Dinwiddie occurred between September of 1998 and February of 1999. Holland's second series of visits to Appellee took place between August of 2001 and October of 2003. During the first series of visits, Dr. Dinwiddie cleaned Holland's teeth and replaced a pre-existing crown on a tooth. In June of 1999, Holland began visiting a different dentist in Columbia, Tennessee, where his daughter and new grandchild lived.

Holland returned to Dr. Dinwiddie on August 8, 2001. At this time, Holland had all of his natural teeth except for his wisdom teeth, which had been extracted years earlier. Upon recognizing gaps between Holland's gums and pre-existing crowns on two of his teeth, Dr. Dinwiddie referred Holland to a specialist for crown lengthening surgery. Holland ultimately decided against having the crown lengthening surgery, and he sought an alternative remedy from Dr. Dinwiddie. Dr. Dinwiddie removed the existing crowns and took their impressions in order to make modified replacements, but the replacement crowns did not fit. Dr. Dinwiddie gave Holland two temporaries for these teeth, but the temporaries did not fit properly and often "popped off." Holland claimed that he was charged for the replacement crowns, and that despite his repeated inquiries with the dentist's office, the crowns were not replaced.

In March of 2002, after Dr. Dinwiddie performed a root canal, Holland developed painful abscesses and infections in his mouth which caused severe swelling. This lasted several months, with multiple visits to Dr. Dinwiddie, until one tooth broke off at the root in August or September. Dr. Holland removed the remainder of this tooth in September of 2002. Holland was given a partial replacement for the tooth, with which Holland experienced dissatisfaction. Holland experienced significant deterioration and decay of several other teeth in the following months, and he experienced more pain, abscesses, and infection. Dr. Dinwiddie continued to perform treatment on Appellant, including root canals, placement and replacement of fillings, and extraction of at least two more of Holland's teeth. Holland claims that because of the swelling, pain and difficulty speaking, he "was not able to work on a regular enough basis to be much of an influence." He claims that this led to the loss of several valuable insurance accounts. Holland's last office visit to Dr. Dinwiddie was on October 30, 2003, and the record indicates that Dr. Dinwiddie filled a prescription for Holland in early January of 2004.

In late 2003, the pain in Holland's mouth worsened. During the Christmas holidays, he attempted to reach Dr. Dinwiddie, but he was unsuccessful. Upon the recommendation of his son-in-law, Holland made an appointment to see Dr. Victor C. Beck, Jr. ("Dr. Beck"), who was a dentist in Columbia, Tennessee. On January 12, 2004, Holland filled out a patient registration form from

Dr. Beck's office and when asked, "[have] your past experiences in a dental office always been positive?", he responded, "no." On this form, Holland identified Dr. Dinwiddie as his previous dentist. On January 13, Holland visited Dr. Beck's office for a brief consultation with one of Dr. Beck's associates ("Dr. Follis" or "DF") who documented the visit as follows:

> DF talked to [patient] and went over health [history]. DF took initial look at [patient] and noticed that [patient] had many dental issues that needed prompt attention. DF discussed need for NP exam to do comprehensive [treatment] plan for him, rather than just looking at his front teeth. [Patient] agreed and stated that he knew he needed a lot of work and was ready to get started. *He confided in us that his past dentist was very nice, but has not been able to help his condition and he feels his teeth have gotten much worse over the last two years under her care.* [Patient]'s daughter lives in Columbia and is a [patient] here . . . . I informed [patient] that he will more than likely need a full mouth reconstruction (implants, crown and bridge, etc.) due to the extensive breakdown of his teeth. [Patient] is ready to get started and stated that he "trusted us and would do whatever we said."

(emphasis added). Holland returned on January 20 for a complete examination by Dr. Beck, and Holland reported having "been in significant pain for the last couple of years, dental pain." Dr. Beck noted in his records that Holland related "some unpleasant experiences with his previous dentistry."

Holland thereafter visited Dr. Beck many times throughout 2004. At some point during these visits, Holland said that Dr. Beck informed him that his mouth was "a wreck" and "beyond professional belief." Dr. Beck identified multiple abscesses that had developed on many of Holland's teeth. Dr. Beck performed significant work on all but a few of the teeth in Holland's mouth, including root canals, crown work, and the extraction of at least nine teeth. The total cost of this treatment by Dr. Beck was in excess of $27,000. In October of 2004, Dr. Beck examined Holland's previous dental records and x-rays and expressed his opinion that Dr. Dinwiddie had committed dental malpractice in her treatment of Holland.

Holland and his wife filed a complaint against Dr. Dinwiddie on January 12, 2005, in the Circuit Court for Benton County, Tennessee. Holland alleged that Dr. Dinwiddie had been negligent in the treatment she provided since 2001, through her failure to:

> (a) properly fill and crown teeth that she determined needed these dental services to avoid more permanent damage to his teeth; (b) timely evaluate and treat conditions indicating the need for dental interventions including: replacing fillings, filling areas of his teeth that indicated the presence of decay resulting in permanent damage to gums and bones, placement of permanent crowns on teeth that she was paid for but never performed, and performance of a root canal,

-3-

which was started but never finished; (c) timely treat Bobby Holland's dental conditions which resulted in the development of multiple abscesses and overwhelming infection, requiring extensive additional work, removal of many permanent teeth and pain and discomfort; (d) timely and accurately advise Bobby Holland of the nature, extent and severity of his condition in time to allow him to seek alternative dental care to correct the problem before permanent damage occurred;

Included in the malpractice claim were allegations that Dr. Dinwiddie had:

> falsely blam[ed] a [W]ater [P]ik for the damage to Bobby Holland's teeth and gums caused by her failure to adequately and timely treat the infection and other problems created by her negligence; . . . charg[ed] and g[otten] paid for services that were never completed, including seeding of permanent crowns; . . . [and] fail[ed] to adhere to the accepted standard of practice for dentist [sic] treating patients under the same or similar circumstances that she treated Bobby Holland.

Holland sought damages for dental expenses, physical and mental pain and suffering, lost wages, income and earnings due to his ability to conduct his business, and damages for loss of consortium with his wife.

Dr. Dinwiddie filed a motion for summary judgment on November 28, 2005, in which Appellee asserted that Holland's claims were barred by the statute of limitations and statute of repose of the Medical Malpractice Act, located at Tenn. Code Ann. §§ 29-26-116. In an order entered on January 19, 2006, the trial court granted Appellee's motion for summary judgment. The court found that Holland was "aware of facts sufficient to put a reasonable person on notice that he had suffered an injury as a result of wrongful conduct more than one year prior to filing this lawsuit on January 12, 2005." The trial court held that the claims were time-barred pursuant to the statute of limitations provision under Tenn. Code Ann. § 29-26-116(a). On February 3, 2006, Holland filed a motion to alter or amend the judgment pursuant to Tennessee Rules of Civil Procedure Rule 59.04, which the trial court denied in an order entered on February 21, 2006. Holland filed a timely notice of appeal to this Court.

## II. Issue Presented

On appeal, Holland presents the following issue for review:

Whether there exists a material factual dispute as to when Appellant discovered or reasonably should have discovered his injury.

For the following reasons, we affirm.

## III. Standard of Review

Summary judgment is appropriate when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. ***McIntosh v. Blanton***, 164 S.W.3d 583, 585 (Tenn. Ct. App. 2004) (citing TENN. R. CIV. P. 56.04; ***Byrd v. Hall***, 847 S.W.2d 208, 214 (Tenn. 1993)). When a motion for summary judgment is used defensively, the plaintiff must present evidence sufficient to establish the essential elements of the claim on which he or she will bear the burden of proof at trial. ***Blair v. Allied Maint. Corp.***, 756 S.W.2d 267, 269-70 (Tenn. Ct. App. 1988). We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. ***Guy v. Mut. of Omaha Ins. Co.***, 79 S.W.3d 528, 534 (Tenn. 2002).

## IV. Analysis

On appeal, Appellant argues that the trial court erred when it granted Appellee's motion for summary judgment on his dental malpractice action, because a genuine issue of material fact existed as to when Appellant could have discovered his injury. Holland argues that when the trial court applied the discovery rule exception to the one year statute of limitations for his claims, it erroneously concluded that Holland was "aware of facts sufficient to put a reasonable person on notice that he had suffered an injury as a result of wrongful conduct more than one year prior to filing this lawsuit on January 12, 2005." Appellant relies on his deposition testimony and affidavits, and those of his expert witness, Dr. Beck, in attempting to establish that he did not, and could not, discover his injury until January 20, 2004, "at the earliest." Appellant maintains that the trial court incorrectly granted Dr. Dinwiddie's motion for summary judgment because the date of discovery was a material fact to be determined by a jury. As counsel for Appellant admitted at oral argument upon questioning by this Court, Holland does not allege that Dr. Dinwiddie caused his underlying injuries, but that she was negligent in treating Holland's dental problems. Holland proposes that the exacerbation of decay and infection in his teeth and mouth was a direct result of Appellee's improper interpretation of x-rays showing decay, inadequate filling of root canals, inadequate placement of fillings, and ignoring x-ray findings. Holland states that he had no reason to suspect that Dr. Dinwiddie's treatment led to these problems, because Appellee had opined that they stemmed from aggressive brushing and/or the use of a "Water-Pik."

Conversely, Dr. Dinwiddie contends that summary judgment should be affirmed because of the extent of Holland's dental problems occurring between 2001 and late 2003, Holland's decision to visit another dentist in early 2004, and his statements to Dr. Beck and his employees regarding his dissatisfaction with Dr. Dinwiddie's treatment. Dr. Dinwiddie argues that by October of 2003, when she last treated Appellant, Holland was undeniably aware that his dental condition had significantly worsened under her care.[1] Appellee directs us to Holland's own deposition testimony that he had suffered unrelenting pain and infection in his mouth during the final two years of Dr. Dinwiddie's treatment in support of the contention that these facts were more than sufficient to put a reasonable person on notice of the wrongs alleged in Appellant's complaint.[2]

The applicable statute of limitations in this case provides:

> Statute of limitations - Counterclaim for damages.
>
> (a) (1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104.
>
> (2) *In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery.*

TENN. CODE ANN. § 29-26-116(a)(1)–(2) (2000) (emphasis added). This "discovery rule" for medical malpractice cases involving negligence was first adopted by our Supreme Court in *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974), and codified in 1975. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998); TENN. CODE ANN. § 29-26-116(a)(2) (2000). Within the meaning of the statute, "discovery" refers to the "discovery of the existence of a right of action, that is, facts which would support an action for tort against the tortfeasor," or "when in the exercise of reasonable care and diligence, it should have been discovered." *McDaniel v. Clare*, No. 02A01-9510-CV-00237, 1996 Tenn. App. LEXIS 786, at *6 (Tenn. Ct. App. Dec. 12, 1996) (citing *Hathaway v. Middle Tenn. Anesthesiology, P.C.*, 724 S.W.2d 355, 359 (Tenn. Ct. App. 1986); *Bennett v. Hardison*, 746 S.W.2d 713, 714 (Tenn. Ct. App. 1987)). A cause of action in tort does not accrue until a judicial remedy is available to the plaintiff. *Wyatt v. ACandS, Inc.*, 910 S.W.2d 851, 855 (Tenn. 1995). A judicial remedy is available when a breach of a legally recognized duty owed to the plaintiff by the

---

[1] Appellee also notes that while Holland attributes his dental condition to her medical negligence, "[t]he cause of the deterioration process is the subject of intense debate among the parties[,]" and that her experts "assert that the deterioration process was directly caused by Mr. Holland's clandestine abuse of substantial quantities of prescription narcotics, which dramatically escalated in late 2000 and 2001 and continued, unbeknownst to Dr. Dinwiddie, throughout the time that Mr. Holland was under her care." This argument is beyond the scope of our review on appeal, and we express no opinion as to its merit.

[2] Appellee alternatively urges us to affirm the trial court's judgment on the basis of the three-year statute of repose for medical malpractice actions. This defense was not addressed by the trial court's final order and similarly will not be considered on appeal.

defendant causes the plaintiff legally cognizable damage. *Id.* (citing *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990)).

A plaintiff may not, however, delay filing suit until all injurious effects or consequences of the actionable wrong are actually known. *Id.* (citing *Chambers v. Dillow*, 713 S.W.2d 896, 898 (Tenn. 1986); *Security Bank and Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 864-65 (Tenn. 1983); *Taylor v. Clayton Mobile Homes, Inc.*, 516 S.W.2d 72, 74-75 (Tenn. 1974); *Bennett v. Hardison*, 746 S.W.2d 713, 714 (Tenn. Ct. App. 1987); *National Mortg. Co. v. Washington*, 744 S.W.2d 574, 579 (Tenn. Ct. App. 1987)). Furthermore, the statute of limitations is not tolled until the plaintiff actually knows the "specific type of legal claim he or she has," or that "the injury constituted a breach of the appropriate legal standard." *Roberts v. Bicknell*, 73 S.W.3d 106, 110 (Tenn. Ct. App. 2001) (citing *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997); *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). "[T]he statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Shadrick*, 963 S.W.2d at 733; *see also* *Hoffman v. Hosp. Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983) ("[T]he statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person is not put on inquiry.").

As it appears to be undisputed that the occurrence of injury in this case took place more than one year before Appellant filed suit on January 12, 2005, the only issue we will consider is whether Appellant had sufficient information to have discovered his injury as of January 12, 2004, one year before filing suit. Based upon our review of the record, including Appellant's own deposition testimony regarding his dental condition while under Dr. Dinwiddie's care, Dr. Beck's deposition testimony, and the allegations set forth in Holland's complaint, we conclude that Appellant discovered, or reasonably should have discovered, his injury and sufficient facts to support his allegations in tort well before January 12, 2004. We believe that Appellant's somewhat inconsistent positions as to the date of discovery, as well as his contentions that he could not have reasonably discovered his injury until he received an expert opinion from Dr. Beck, fail to establish any material dispute of fact as to when Appellant should have discovered his injury.

From his visits to Appellee in August of 2001 to October of 2003, Holland's dental health regressed significantly. Holland admitted that when he began his second round of treatment with Appellee in August of 2001, he had all of his teeth except for his wisdom teeth. Dr. Dinwiddie performed fillings and crown extractions on Holland over several months. In March of 2002, after a root canal by Appellee, Holland claimed that he developed painful abscesses in his mouth:

> I immediately started to swell, and I had – my face – actually, it was distorted. I couldn't close my mouth. Within about ten days, I couldn't shut my mouth, it was so swollen. Had a knot that came up underneath at the – it would have been at the root, at the base of the root. . .She opened – took the top off the seal, I guess it is. It's a hard – hard seal. And hoped – and she said that we'd see if it would drain.

. .It drained on – it was quite – it was very sickening. I kept a – an abscess that erupted with a knot here (indicating), and it – when it went down, it ended up splitting open where it oozed infections constantly. And so I did that for – I don't know how long. You know, at least a couple months.

Holland claimed that as many as eight teeth were eventually affected by abscesses. By September of 2002, Holland testified that one of his teeth had snapped off at the gum line, and that he was experiencing significant swelling, decay, and infection affecting several other teeth. Holland continued to experience throbbing pain around the teeth whose crowns had been removed and never replaced. In addition, other teeth had become affected with decay and infection, which he also described in his deposition testimony:

I mean, I know I had infection because I could taste it, you know, constantly. And I know that some of the teeth were repaired repeatedly. I don't know. I can't recall which ones. The numbers seven and eight – I know this one here was repaired. Number 20 was repaired a lot. And also the bottom lower in the front here (gesturing), they were – they became – I call it angry at the gum line then. All my teeth were getting to look angry at the . . . gum line. And of course I was kind of obsessed with it, I guess. In my business, if you can't talk, it's very difficult to do business. And of course, the pain was bad. But I don't – I don't know how many times they were all repaired. They were repaired quite often.

Another tooth had deteriorated beyond repair, which Dr. Dinwiddie extracted in September of 2002, and yet another in March of 2003. Holland claimed that in late 2003, the pain became worse, and that he only contacted Dr. Beck in early 2004 after he had been unable to reach Dr. Dinwiddie for relief.

In Holland's complaint, filed on January 12, 2004, he alleged that he "did not discover the Defendant's negligence or have reason to suspect the Defendant had negligently treated [him], or the extent of the Defendant's negligence, until January 20, 2004, when [he] was evaluated by another dentist in Columbia, TN who described his condition as a 'train wreck.'" In his brief on appeal, Holland claims that the only way that he could know or discover that his injuries were the result of Dr. Dinwiddie's negligent treatment was by having a dentist "review the records and x-rays and advise [Holland] that Dr. Dinwiddie had either negligently interpreted the x-rays or simply ignored the findings." Dr. Beck did not review Holland's records from Dr. Dinwiddie until October of 2004.

We find Appellant's position, that it was necessary to obtain Dr. Beck's expert opinion of Dr. Dinwiddie's treatment before Holland could file suit, to be incorrect as a matter of law. "Advice from another health care professional that a claim exists is not a prerequisite to accrual of a medical malpractice cause of action." **Stanbury v. Bacardi**, 953 S.W.2d 671, 678 (Tenn. 1997); *see also*

-8-

*Wansley v. Refined Metals Corp.*, No. 02A01-9503-CV-00065, 1996 Tenn. App. LEXIS 552, at *9-10 (Tenn. Ct. App. Sept. 9, 1996) ("[T]here is no requirement of a formal medical diagnosis in order for a claim to accrue. . . The fact that plaintiff may not have had the proof necessary to sustain his cause of action until within a year prior to filing suit is immaterial in determining when his cause of action accrued."). For the purposes of TENN. CODE ANN. § 29-26-116(a)(2), a plaintiff discovers an injury after he or she has "discovered the existence of facts which would support an action in tort against the tortfeasor" including "not only the existence of an injury, but the tortious origin of the injury." *Wyatt*, 910 S.W.2d at 855 (citing *Hathaway v. Middle Tenn. Anesthesiology, P.C.*, 724 S.W.2d 355, 359 (Tenn. Ct. App. 1986)). A plaintiff need not actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a right of action. *Stanbury*, 953 S.W.2d at 678 (citing *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)).

At oral argument, Appellant's counsel conceded that the very earliest his injury could have been discovered was in January of 2004, when he first visited Dr. Beck. However, Holland's statements in January of 2004 to Dr. Beck and his staff regarding his dissatisfaction with Dr. Dinwiddie's treatment over the previous two years, which he does not dispute, further lead us to conclude that the trial court correctly found as a matter of law that Appellant had, or should have, discovered his injuries and their tortious origins more than a year prior to January 12, 2005. "When the facts material to the application of a rule of law are undisputed, the application is a matter of law for the court since there is nothing to submit to the jury in favor of one party or the other." *Timmons v. HCA Regional Hosp. of Jackson*, No. 02A01-9301-CV-00023, 1993 Tenn. App. LEXIS 800, at *7 (Tenn. Ct. App. Dec. 30, 1993) (citing Byrd v. Hall, 847 S.W.2d 208, 214). Holland admitted to Dr. Follis, Dr. Beck's associate, that he felt his teeth had "gotten much worse over the last two years under [Dr. Dinwiddie's] care" and reported to Dr. Beck that he had been in significant dental pain for the previous two years. Holland did not see any other dental professional between his last visit to Dr. Dinwiddie on October 30, 2003, and his first visit to Dr. Beck's office on January 12, 2004. His knowledge, therefore, that his dental condition had gotten worse during his treatment by Appellee appears to have been based upon his own reasonable conclusions from his experiences over this two year period. We believe that the trial court was correct in holding as a matter of law that a reasonable person should have discovered the injury by the time of the last visit to Dr. Dinwiddie in October of 2003. This was the latest date at which Holland's cause of action could reasonably have accrued. Therefore, the one-year statute of limitations set forth at TENN. CODE ANN. § 29-26-116(a)(1) barred Appellant's claims of malpractice against Dr. Dinwiddie.

We hold that the trial court correctly granted Appellee's motion for summary judgment. We find that the only reasonable conclusion that could be reached in light of the record before us is that Holland had discovered, or should have discovered through reasonable diligence, his injury and cause of action against Dr. Dinwiddie by October 30, 2003, which was the date of his last office visit to Dr. Dinwiddie and fourteen months before he filed his complaint on January 12, 2004.

## V. Conclusion

The judgment of the trial court is affirmed. Costs are assessed against Appellants, Bobby and Rita Holland, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE