# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 1, 2012 Session

## EDWARD JOSEPH WARWICK, SR. v. KATHERINE DODGE GRIBBEN WARWICK, ET AL.

### Appeal from the Circuit Court for Hamilton County
### No. 10C1451    Buddy D. Perry, Judge

### No. E2011-01969-COA-R3-CV-FILED-NOVEMBER 29, 2012

Edward Joseph Warwick, Sr. ("Husband") sued his former spouse, Katherine Dodge Gribben Warwick ("Wife"); her attorney, David W. Noblit ("Counsel"); and Noblit's law firm (collectively "Defendants"). Husband alleges that, since the time of the parties' divorce, Wife and Counsel had conspired against him in an effort to destroy him and gain access to his separate funds. Husband claims the Defendants are guilty of fraud on the court, abuse of process, intentional infliction of emotional distress, and a civil conspiracy, for which he seeks eight million dollars in compensatory and punitive damages. Defendants moved for judgment on the pleadings. Following a hearing, the trial court dismissed Husband's complaint. The court stated "that the[] causes of action are barred by the statute of limitations or that the complaint failed to state a claim, or both." Husband appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J. and D. MICHAEL SWINEY, J., joined.

James D. R. Roberts, Jr., and Janet L. Layman, Nashville, Tennessee, for the appellant, Edward Joseph Warwick, Sr.

Jeffrey W. Rufolo, Chattanooga, Tennessee, for the appellee, Katherine Dodge Gribben Warwick.

Sam D. Elliott, Chattanooga, Tennessee, for the appellees, David W. Noblit and Leitner, Williams, Dooley & Napolitan, PLLC.

## OPINION

### I.

Husband and Wife were married for some ten years and had two children before they separated in 2008, not long after Husband discovered Wife's extramarital affair. Husband received inpatient treatment for a variety of problems, including his discovery of Wife's indiscretion, and was diagnosed with "post-traumatic stress order." Wife sued for divorce. By pretrial stipulation, the court granted Husband a divorce, adopted the parties' agreed parenting plan, and incorporated it into the divorce judgment. The trial focused primarily on the division of marital property. Dissatisfied with certain aspects of the trial court's decision, Husband appealed. We affirmed the trial court's judgment.[1]

The bitter end of the parties' marriage was only the beginning of the legal proceedings between these two individuals. A custody battle and numerous other lawsuits ensued. In the present case, the trial court provided a history of the extended litigation arising out of or following the divorce action. In an effort to place this case in context, we set out portions of the trial court's summary:

> For several years, [Husband] and [Wife] have engaged in various law suits. [Husband] has sued other individuals and has made numerous complaints of unethical and unprofessional conduct against lawyers and the judge who tried the divorce case. Because the Hamilton County judges recused themselves [following the original divorce action], I was appointed by the Supreme Court to hear all the cases involving the Warwicks.
>
> The cases that I have heard, or am currently hearing are as follows:
>
> Docket number 08-D-398, Warwick v. Warwick. This is the original divorce case, and now it involves petitions to modify custody.

---

[1] *See **Warwick v. Warwick**, No. E2009-00635-COA-R3-CV, 2010 WL 323059 (Tenn. Ct. App., E.S., filed Jan. 28, 2010).

Docket number 09-C-1573, Warwick v. Warwick [the "spyware" case]. This is a civil matter brought by [Wife] against [Husband] for alleged use of spyware on [Wife's] computer. Although we have heard various motions in this particular case, it is my understanding that this matter was recently non-suited.

Docket number 275989, State v. Warwick. [Husband] was indicted for an alleged violation of the order of protection. The case was tried without a jury before me, and I found [Husband] not guilty.

Docket number 10C-90-9, Warwick v. Noblit. This is a civil action alleging that [Wife's Counsel] converted [Husband's] personal property, a cell phone. The court dismissed this case. . . .

Docket number 10-C1-038, Warwick v. Warwick. [Husband] sued [Wife] for breach of contract. [Husband] asserted that he had an agreement with [Wife] that she would pay for food charged by the children at the parties' country club. This case was heard on December 6, 2010. I found that [Wife] had agreed to pay for the food and entered a judgment against her for an amount just under $70.00.

On December 7, 2010, Husband filed a complaint in the case at bar. Husband essentially contended that after her affair, Wife hired Counsel to represent her in the divorce and, from that point forward, she and Counsel engaged in a conspiracy against him. As we have noted, Husband claims that the conspiracy consisted of fraud on the court, abuse of process, and intentional infliction of emotional distress. A sampling of the instances of alleged tortious conduct by Wife and Counsel are set forth in that portion of the complaint addressing the claim for fraud on the court:

Omitted Assets from Marital Estate

As early as April 2008, [Wife and Counsel] decided they could attach [Husband's] separate estate by bringing [the "spyware" case] against him.

-3-

Even so, they chose to withhold the information during the parties' 2008 divorce, and only bring their perceived cause of action against [Husband] a year later in December 2009.

This alleged cause of action was never mentioned during the parties' divorce, it was not disclosed in . . . discovery . . . in May 2008, or mentioned in three separate depositions given by [Wife].  It was also not listed as an asset on [Wife's] statement of assets and liabilities. . . .

[Wife and Counsel] also chose not to list as an asset [Wife's] rights to a book she is writing in collaboration with Lee Deckelman.[2]

[Deckelman] testified extensively about [Wife's] writing in his 2008 deposition.

*   *   *

The False Affidavit/Temporary Restraining Order

On or about April 14, 2008, [Counsel] filed [Wife's] Affidavit which he knew contained lies about [Husband] in order to get a Temporary Restraining Order against [Husband].

This Affidavit alleged that [Wife] had been the victim of severe physical abuse for a number of years. [Wife] later admitted under oath that her allegations of abuse are false.

*   *   *

Violation of the Agreed Order

On or about February 25, 2008, the parties entered into an Agreed Order containing . . . provisions[] including that [Wife] would remain in the marital home, and that the parties would work together to choose a counselor for their children.

---

[2]Earlier in the complaint, Husband identifies Mr. Deckelman as the person with whom Wife had an adulterous affair in 2007.

[Wife] left the marital residence in violation of the Agreed Order, and entered into a lease purchase agreement for another home.

During this same time, [Wife] also violated the Agreed Order by unilaterally selecting a counselor for the children without any notice of [Husband].

[Wife] testified in her [2008] deposition that she consulted [Counsel] about leaving the marital home, buying the house, and selecting the counselor, and that he did not advise her that court permission was necessary.

The complaint asserts that each of the claimed instances of fraud was "an intentional contrivance to keep [Husband] and the Court in ignorance of the real facts," as a result of which, "the Court reached a wrong conclusion, and [Husband] suffered harm and damages." In particular, Husband seeks damages for loss of wages, pain and suffering, mental anguish, "unnecessary" attorney's fees for the protracted and "unnecessary" litigation, medical bills, and loss of business income as a result of Wife and Counsel's "campaign" to destroy him.

Wife and Counsel filed separate answers in which they denied that Husband's claims entitled him to any relief. For her part, Wife stated that many of the allegations (1) were fully litigated in the parties' divorce or other litigation and (2) are barred by the statute of limitations. Among her defenses, Wife admitted "that [Husband] is psychologically impaired," but asserted that his condition was due to pre-existing emotional problems and not as a result of any conduct by Defendants. Counsel and his law firm asserted affirmative defenses including the failure to state a claim, the statute of limitations, collateral estoppel, res judicata, laches, waiver, and estoppel, and, as to the specific claims against him and his law firm, the defense of litigation privilege.

On February 16, 2011, Defendants filed a joint motion for judgment on the pleadings pursuant to Tenn. R. Civ. P. 12.03. At the March 2011 motion hearing, Defendants largely reiterated their affirmative defenses that the complaint failed to state a cause of action and that relief was barred by the statute of limitations. The trial court agreed. In summarizing its dismissal of the complaint, the court stated:

> I have reviewed . . . [Husband's] allegations regarding the torts of fraud on the court, abuse of process, and intentional infliction of emotional distress, and I have concluded that these causes of action are barred by the statute of limitations, or that the

complaint failed to state a claim, or both. Without an underlying tort, the civil conspiracy claim does not state a cause of action.

Husband filed a timely notice of appeal.

## II.

Husband presents the following issues for this Court's review:

> 1. Whether the trial court erred in considering facts and other matters outside the pleadings in dismissing [Husband's] cause of action without allowing the parties "reasonable opportunity" to treat the [Rule 12.03 Motion] as one for summary judgment.
>
> 2. Whether the trial court erred in dismissing [Husband's] case pursuant to the Defendants' Tenn. R. Civ. P. 12.03 motion.
>
> 3. Whether the trial court erred in ruling that [Husband's] case was time-barred pursuant to the statute of limitations.

## III.

This Court has set forth the standard by which a motion for judgment on the pleadings is reviewed:

> A motion for judgment on the pleadings is in effect a motion to dismiss for failure to state a claim upon which relief can be granted. It "admits the truth of all relevant and material averments in the complaint but asserts that such facts cannot constitute a cause of action." Both the trial court and this court must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion. The ultimate determination of whether the facts alleged make out a cause of action is a question of law. Our review of questions of law is de novo, with no presumption of correctness.

*Stoneybrook Golf Course, LLC v. City of Columbia,* No. M2009-01780-COA-R3-CV, 2010 WL 2922023 at *5(Tenn. Ct. App. E.S., filed Jul. 26, 2010). Further, "[t]he issue of whether a claim is barred by an applicable statute of limitations is a question of law, which this court

reviews de novo." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing ***Brown v. Erachem Comilog, Inc.***, 231 S.W.3d 918, 921 (Tenn. 2007)).

IV.

We first examine Husband's contention that the trial court erroneously disposed of the motion for judgment on the pleadings as styled rather than as a motion for summary judgment. From Husband's view, the trial court "took it upon itself to look past the pleadings" in making its ruling and therefore was required to treat the motion as one for summary judgment. Husband concludes that the judgment should be reversed so that the parties may undertake further discovery and produce "the materials generally used in summary judgment proceedings" in support of their respective positions.

Tenn. R. Civ. P. 12.03 addresses a motion for judgment on the pleadings as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Tenn. R. Civ. P. 12.02 contains similar language: "If, on a motion asserting the defense . . . [of] failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . ." Tenn. R. Civ. P. 12.02 (2011).

Husband notes that the trial court "attached to its Memorandum [Order] opinions from other matters involving [Husband and Wife]." Without further elaboration, Husband concludes that the trial court thereby "erred in considering facts and other matters outside the pleadings" without applying the rules governing summary judgment. He does not, however, point us to any particular aspect of the attachments that the trial court considered in reaching its decision.

As we have noted, a defendant's Rule 12.03 motion for judgment on the pleadings is akin to a Rule 12.02 (6) motion to dismiss for failure to state a claim upon which relief can be granted. Again, "[s]uch a motion tests only the legal sufficiency of the complaint, not the strength of the proof. The resolution of the motion is determined by an examination of the

pleadings alone." ***Highwoods Properties, Inc. v. City of Memphis***, 297 S.W.3d 695, 700 (Tenn. 2009). "For purposes of analysis, the motion contemplates that all relevant and material allegations in the complaint, even if true and correct, do not constitute a cause of action." ***Id***. In this case, the trial court's order indicates that it accepted as true the facts as stated in the complaint, but determined that the claims presented were legally insufficient to state a claim for which relief can be granted or as time-barred. The ruling was *based on the facts* as set forth in the complaint; it was not necessary for the trial court to consider any "outside matters" and nothing in the record suggests that it did.

We reject Husband's assertion that the trial court considered matters outside of Husband's complaint in disposing of the motion.[3] The trial court properly considered Defendants' motion for judgment on the pleadings as a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02. In this appeal, we do the same.

V.

A.

Husband challenges the trial court's dismissal of his complaint for failure to state a claim for which relief can be granted. *See* Tenn. R. Civ. P. 12.02(6). He asserts that the factual allegations are particularly stated and legally sufficient to give rise to a cause of action. We address Husband's claims in turn, mindful that a motion to dismiss for failure to state a claim should be granted "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." ***Webb v. Nashville Area Habitat for Humanity, Inc***., 346 S.W.3d 422, 426 (Tenn. 2011)(citing ***Crews v. Buckman Labs. Int'l, Inc***., 78 S.W.3d 852, 857 (Tenn. 2002)).

B.

Husband contends that a cause of action for fraud on the court is stated by allegations that Wife and Counsel "conspir[ed] to omit assets from the Court's review in dividing the marital estate," knowingly submitted an affidavit containing false allegations against [Husband] for the purpose of obtaining an ex parte temporary restraining order, and knowingly violated terms of the parties' agreed order in the divorce case. Husband asserts that as a result of such action, the trial court was ignorant of the "real facts," and Husband suffered harm for which he is entitled to money damages. As he did at trial, Husband

---

[3] It is not clear why the trial court attached opinions, from other cases between the parties over which it presided, to its memorandum, but, as we have stated, there is nothing in the record reflecting that he considered these other opinions.

strenuously asserts that the allegations give rise to an action for "fraud on the court" that he submits is provided for under Tenn. R. Civ. P. 60.02.

In holding that the complaint failed to state a cause of action, the trial court found that Rule 60.02 does not provide a tort action for fraud on the court:

> In [Husband's] brief, they argue, "Tenn. R. Civ. P. 60.02 provides a mechanism for seeking relief for fraud on the court: This rule does not limit the power to entertain an independent action to relieve a party from a judgment order or proceedings, or to set aside a judgment for fraud upon the court."
>
> I do not understand this language to create the tort of fraud on the court. The language allows a separate action to provide a party with a relief from an order obtained by fraud on the court; it does not, in my view, create a new tort. Trial judges have a duty to follow existing law, and it is not our prerogative to be creative. The complaint does not state a claim for fraud on the court.

Before this Court, Husband suggests that the question is one of first impression in this state. He invites this Court to expressly adopt the "fraud on the court" action that he insists is envisioned by the "plain" language of Rule 60.02 and allow him to proceed to trial. We thus focus on a claim for fraud in the context of Rule 60.02. The Rule provides, in relevant part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . The motion shall be made within a reasonable time, and for reason[] (2) not more than one year after the judgment, order or proceeding was entered or taken. [. . . .] *This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court.*

(Emphasis added). Relying on the emphasized language, Husband alternatively submits that Tennessee either does or should recognize an independent cause of action for fraud on the

court *for which damages may be awarded*. He points to ***Duncan v. Duncan***, 789 S.W.2d 557, 562 (Tenn. Ct. App. 1990), in support of his argument. In that case, the former wife sought post-judgment relief pursuant to Rule 60.02(2) from that portion of the divorce decree establishing the value of the former husband's business; she asserted that her former spouse had intentionally withheld information concerning the true value of his business during the divorce. On appeal from the trial court's denial of relief, this Court first observed that "Tenn. R. Civ. P. 60.02(2) specifically provides that otherwise final judgments tainted by fraud, misrepresentation, or other misconduct may be set aside within one year after their entry." ***Id***. We further stated:

> *[P]ost-judgment relief is warranted when the moving party proves with clear and convincing evidence the existence of conduct amounting to an intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights*.
>
> Both withholding evidence and the knowing use of perjured testimony can provide grounds for granting post-judgment relief pursuant to Tenn. R. Civ. P. 60.02(2).

(Emphasis added; internal citations omitted.) As we understand it, Husband suggests that the above-emphasized language states the essential elements of a fraud on the court action. We see it differently. ***Duncan*** expressly recognizes that fraud can form the basis of a motion seeking post-judgment relief pursuant to Rule 60.02(2) and, if proven, can result in the tainted judgment being set aside. In no way, however, do we read ***Duncan*** as supporting Husband's position that there is any provision in Rule 60.02 which establishes an independent action for fraud on the court seeking monetary damages based on the tortious conduct of another party.

We think the Supreme Court's decision in ***Black v. Black,*** 166 S.W.3d 699 (Tenn. 2005), relied upon by the Defendants, is most instructive. In ***Black***, the plaintiff, *i.e.*, the former wife, filed a "complaint for damages for fraud, deceit, and coercion" against her former husband alleging that he had coerced her into signing their marital dissolution agreement while she was under the influence of alcohol and that he fraudulently stated his worth. The suit was brought in chancery court, more than a year after their final divorce decree was entered in circuit court. Wife sought compensatory and punitive damages for Husband's alleged misconduct. The trial court dismissed the complaint for failure to state a claim. On appeal, this Court found that the complaint was in substance an independent

-10-

action to set aside the judgment pursuant to Rule 60.02, but that Wife failed to make out a claim for fraud under the Rule 60.02's "savings" provision of the Rule. On second-tier appellate review, the Supreme Court agreed. The Court stated:

> A motion filed under Rule 60.02 "shall be made within a reasonable time, and for reason[] . . . (2) not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02.
>
> Because the Wife filed her complaint in the chancery court, rather than filing a motion in the circuit court within one year of the entry of the final divorce decree, the complaint cannot be considered as a motion for relief from the divorce decree under sections (1) though (5) of Rule 60.02.
>
> Rule 60.02, however, also contains a "savings" provision, which clarifies that the rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court." Although there is no time limit for filing an independent action to set aside a judgment, it may be granted "only under unusual and exceptional circumstances" and "where no other remedy is available or adequate."
>
> Although a motion to set aside a judgment for fraud under section 2 of Rule 60.02 may be based on intrinsic or extrinsic fraud, an independent action to set aside a judgment under the savings provision of Rule 60.02 requires extrinsic fraud. Intrinsic fraud occurs "within the subject matter of the litigation," and it includes such things as falsified evidence, forged documents, or perjured testimony. Extrinsic fraud, on the other hand, "involves deception as to matters not at issue in the case which prevented the defrauded party from receiving a fair hearing." Examples of extrinsic fraud have included keeping a party from filing a lawsuit by falsely promising a compromise, keeping a party from knowing about a lawsuit, and an attorney's claiming to represent a party while acting in a manner opposed to the party.

Although the Wife's complaint was entitled "Complaint for Damages for Fraud, Deceit, and Coercion" and sought relief in the form of compensatory and punitive damages, the Court of Appeals concluded that the substance of the complaint was an independent action under Rule 60.02 to set aside the final divorce decree entered on December 12, 2000. We agree.

The complaint alleges that the Husband acted fraudulently by withholding the identity and value of his property and securities before the MDA was executed on September 13, 2000. The allegations conflicted with the language of the MDA, which stated in part that the MDA was "fair and reasonable" and "not the result of any fraud, duress, or any undue influence exercised by either party herein upon the other, or by any other person or persons upon either of the parties." The allegations also conflicted with the language of the amended MDA, which was executed on November 29, 2000, and which ratified and affirmed the provisions of the initial MDA. There is no dispute that both the MDA and the amended MDA were incorporated into the final divorce decree, which was entered by the circuit court on December 12, 2000. In sum, the complaint, even when viewed in a light most favorable to the Wife, was an independent action alleging fraud and seeking relief from the final divorce decree entered on December 12, 2000, in the Shelby County Circuit Court.

As a result, we further agree with the Court of Appeals' conclusion that the Wife's complaint did not allege sufficient facts to establish extrinsic fraud as required by the savings provision of Rule 60.02. As discussed above, the complaint alleged that the Husband "fraudulently concealed his true net worth" by withholding the identity and value of his property, securities, law practice, equipment and furnishings. Although these assertions concerned the subject matter of the litigation and may have been sufficient to establish intrinsic fraud had they been pursued within one year of the divorce decree under section 2 of Rule 60.02, there were no assertions of fraud indicative of "deception as to matters not at issue in the case" that "prevented the [appellant] from receiving a fair hearing."

Accordingly, we conclude that the Court of Appeals properly held that the substance of the Wife's complaint sought to set aside the final divorce decree and did not satisfy the savings provision under Rule 60.02 of the Tennessee Rules of Civil Procedure.

***Black***, 166 S.W.3d at 703-04. Lastly, the ***Black*** Court observed that "[n]othing in Rule 60.02, or any other authority cited by the parties, prevents the filing of a common law action for fraud for damages simply because the ground of 'fraud upon the court' may serve as a basis for setting aside a judgment." ***Id***. at 704-05. On analyzing her claim, however, the Court held that it was properly dismissed for failure to sufficiently allege a cause of action for common-law fraud. ***Id***.

Returning to the case at bar, Husband acknowledges ***Black***, but argues it is wholly inapplicable. He asserts that ***Black*** addressed only "regular" fraud as distinguished from the "fraud on the court" at issue here. Husband is technically correct, but this avails him nothing. ***Black*** offers a thorough analysis of the availability of actions for fraud both within and outside the parameters of Rule 60.02. A party may seek relief from judgment within one year of entry of the judgment in the case in which the fraud occurred, or through an independent action for fraud on the court of an extrinsic nature under the "savings" clause of the Rule. Apart from Rule 60.02 , a party may bring a claim for damages based on another party's fraudulent conduct in a common-law action for fraud. To the latter point, however, Husband emphasizes that his is not a case involving a garden-variety, "regular" action for common-law fraud; rather it is premised on Rule 60.02. Thus, we return to the confines of that Rule. Husband has not made out a claim for relief for fraud under Rule 60.02(2) – the complaint was not filed in the divorce court and is filed more than one year after entry of the divorce judgment. Second, any claim for relief pursuant to the savings provision also fails because the allegations of fraud against Wife and Counsel all relate to matters at issue in the divorce case. In our view, a fraud-based action seeking money damages, by whatever label, is not available under Rule 60.02.

Husband further asserts that the federal courts have recognized "fraud on the court" as a viable cause of action and suggests that Tennessee should follow suit. Among many others, he directs our attention to the decisions in ***Aoude v. Mobil Oil Corp***., 892 F.2d 1115 (1st Cir. 1989), and ***Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.,*** 827 F.2d 984 (4th Cir. 1987). Our review of these cases fails to convince us that Fed. R. Civ. P. 60(b), the federal counterpart to Tenn. R. Civ. P. 60.02, provides an action for a tort of fraud on the court by which an "injured party" may recover money damages. Instead, for example, where there is "fraud on the court," *i.e.*, "gross misbehavior" or "an unconscionable scheme" sufficient to "interfere with the judicial system's ability to impartially adjudicate a matter,"

the federal courts have, for example, afforded the affected litigant relief in the form of dismissal of the fraudulent suit or setting aside a fraudulently obtained judgment. *See **e.g.**, **Aoude***, 892 F. 2d at 1118-19; ***Cleveland***, 827 F.2d at 986 (noting that "[a]s [Fed. R.Civ. P.] Rule 60(b) recognizes, district courts may entertain an independent action in equity to set aside a judgment for fraud on the court).

Husband points us to no authority which supports his claim, and we have found none. In short, we agree with the Defendants' conclusion that "[f]raud on the court as defined by [Husband] is simply not a cause of action for damages in Tennessee."

Based on the foregoing, we conclude that Tenn. R. Civ. P. 60.02 does not provide an independent tort action seeking money damages for fraud on the court. The trial court correctly dismissed the claim pursuant to Rule 12.02(6) for failure to state a claim for which relief can be granted.

C.

As for the abuse of process claim, Husband contends that Wife and Counsel have "used the court system and its processes as a means of harassment and intimidation . . . in order to gain an advantage over him, and to cause him harm." He concludes that the "filing of the 'spyware' lawsuit was the culmination of these abuses." Husband asserts that the following allegations of the complaint sustain a cause of action for abuse of process:

> Requesting an ex parte Temporary Restraining Order based upon false allegations against [Husband] . . . .
>
> Requesting an Order of Protection which does not meet the statutory requirements, and which was designed only to discredit [Husband] . . . .
>
> [Wife's] creation of a situation whereby she could have [Husband] arrested . . . . [Wife] intentionally and willfully withheld both the children and their telephones, leaving [Husband] no choice but to dial her cell phone number regarding their whereabouts and safety. . . .
>
> [Wife and Counsel's] willful and intentional omission of marital assets from the division of property, and the subsequent filing of [the "spyware" case](. . .one of the withheld assets). . . . This abuse of process was designed to deny [Husband] an equitable

-14-

division of the marital estate and to attach portions of his separate estate not available to [Wife] in the divorce.

[Counsel] assisted [Wife] in each of these acts, and should be held fully liable for the same. Defendant LAW FIRM is also liable as [Counsel] is its agent and employee. All of these acts had the effect of extending the litigation costs and burden upon [Husband].

This Court has recently undertaken an extensive review of the makings of a claim for abuse of process. In **Blalock v. Preston Law Group**, No. M2011-00351-COA-R3-CV, 2012 WL 4503187 at *4 (Tenn. Ct. App. M.S., filed Sep. 28, 2012), we observed:

To state a claim for abuse of process in Tennessee, as in a majority of other jurisdictions, two elements must be alleged: (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.

Process has been defined broadly as "any means used by court to acquire or exercise its jurisdiction over a person or over specific property." Black's Law Dictionary (5th Ed. 1979). This court has ruled, however, that the mere filing of a motion or document by a party is not automatically considered process within the context of a claim for abuse of process. . . .Mere initiation of a lawsuit, even if accompanied by a malicious ulterior motive, is not an abuse of process.

Rather, a claim for abuse of process "normally rests on some writ, order, or command of the court in the course of a judicial proceeding." Such a claim, therefore, refers to times when the authority of the court is used for some improper purpose. "The gist of the tort of abuse of process is the misuse of the court's power." 1 AM.JUR.2d § 5 (1994). Many kinds of process can lend themselves to misuse, including attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution. Prosser and Keeton on Torts (5 Ed. 1984), Ch. 21, Abuse of Process, § 121.

> Further, the basis for a claim of abuse of process "is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." Thus, abuse of process lies "for the improper use of process after it has been issued, not for maliciously causing process to issue."

(Internal citations omitted.)

Husband arguably met the pleading requirement that Wife and Counsel had an ulterior motive – to harass and discredit Husband, drain his financial resources, and gain access to his separate funds – for seeking relief from the trial court. However, the allegations are largely focused on the filing of documents in court and the initiation of the "spyware" lawsuit which Husband further asserts is an abuse of process in and of itself, in addition to the other related allegations. Claims that Wife sought protective orders, and sued Husband, even with a "malicious" purpose, may have resulted in process being issued, but do not demonstrate a misuse of process "justified in itself for an end other than that which it was designed to accomplish." *Id*. In the same vein, acting in a manner designed to "force" Husband to violate the terms of a court's protective order, leading to his arrest, does not equate to "causing process to issue without justification." *Id*. Lastly, failing to disclose assets during the marital property division is not abuse of process because it does not involve the authority of the court. We therefore conclude that the complaint fails to state a cause of action for abuse of process.

D.

Husband submits that, taken as true, the 57 paragraphs of factual allegations in his complaint sufficiently state a cause of action for intentional infliction of emotion distress. In summary, Husband asserts:

> Over the course of nearly three . . . years, [Wife and Counsel] have antagonized [Husband] at every turn. The[y] have attempted to discredit him in the community, including so inciting the ire of third persons as to have third persons make threats to [Husband] by telephone, email and Facebook. They have used his children as pawns and sought to attach his separate funds not part of the marital estate. They have had him arrested, made admittedly false allegations of rape and physical abuse, lied to his children, forced his children to lie to him,

called the police to his home on countless occasions and had his computer seized by police and searched.

The cumulative effect of this relentless and malicious campaign to harm and destroy [Husband], as well as to attach his separate estate, has been outrageous, and should not be tolerated by civilized society. [Husband] has suffered harm and damages as a result of the Defendants' actions.

In December 2009, the emotional toll of [Wife's] actions on [Husband] had become so great that he was advised by his doctors to leave his job and go on temporary disability. He remained on this temporary disability for a period of six . . . months, at which time he left his employment with Morgan Stanley.

[Husband] continues to be monitored by his doctors and counselors, and although he has reactivated his law license (. . . previously de-activated in order to obtain a Series 7 broker license) and opened a small solo law practice, he is not yet able to work full time.

This temporary disability is a direct result of the emotional trauma caused by the action of [the Defendants].

"The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)(citing *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004)); *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "The test often used by our courts is the one found in Restatement (Second) of Torts § 46 comment d (1964) which states in part:

The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

-17-

> Liability has been found only where the conduct has been so outrageous, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Alexander v. Inman*, 825 S.W.2d 102, 104 (Tenn. Ct. App. 1991). The cited case illustrates the high standard for making out a claim for intentional infliction of emotional distress. In that case, Mr. Alexander claimed outrageous conduct by the defendant, Mr. Inman, based on Mr. Inman's adulterous affair with Mrs. Alexander and on Mr. Inman's perjury concerning these activities in his own divorce proceedings. Under these facts, the trial court found that that portion of the complaint seeking damages for Mr. Inman's "outrageous conduct" failed to state a claim for which relief could be granted. The *Alexander* Court agreed that "Mr. Inman's conduct on both scores is entirely inappropriate and unacceptable. However, in these days and times, an average member of the community would not find it to be so atrocious that it goes beyond the bounds of decency." *Id* at 105. In the present case, we think that a reasonable person hearing of these allegations in the ongoing saga of Warwick v. Warwick would at most be led to remark, "How sad," and to wonder, "When will it end?"

Assuming arguendo that the complaint sets forth the facts necessary to establish that Defendants acted intentionally and thereby caused Husband to suffer a severe mental injury, we conclude that the element of "outrageous conduct" has not been sufficiently pleaded. Defendants, Wife especially, may not have been nice to Husband throughout the years of litigation the parties have endured since their marriage ended, but their conduct, in our view, simply has not extended "beyond all possible bounds of decency," nor can it be properly regarded as "atrocious" or "utterly intolerable." *Alexander*, at 104. On our review, the complaint sets out no facts out of which an action for intentional infliction of emotional distress could arise.

E.

The trial court found that "[w]ithout an underlying tort, the civil conspiracy claim does not state a cause of action." The court also found that "litigation privilege is clearly applicable in this case, and precludes [Husband's] civil conspiracy cause of action."

> The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by

-18-

unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. Conspiracy claims must be pled with some degree of specificity. Conclusory allegations, however, unsupported by material facts will not be sufficient to state such a claim.

***Kincaid v. Southtrust Bank***, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).

We conclude that Husband has failed to make out a claim for civil conspiracy. In order to prevail under this theory, the defendant must also be liable for an underlying tort. *See **O'Dell v. O'Dell***, 303 S.W.3d 694, 697 (Tenn. Ct. App. 2008) (plaintiff bringing action for civil conspiracy must demonstrate the existence of concerted action to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means); ***Watson's Carpet & Floor Covering, Inc. v. McCormick***, 247 S.W.3d 169, 186  (Tenn. Ct. App. 2007) (Civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy). Here, as we have discussed, the allegations of the complaint fail to state a cause of action for any of the torts underlying the conspiracy claim. Accordingly, as the trial court correctly concluded, "without an underlying tort, the civil conspiracy claim does not state a cause of action."

VI.

A.

Husband challenges the trial court's ruling that his claims are time-barred. The gist of Husband's argument is that his causes of action for fraud on the court, abuse of process, and intentional infliction of emotional distress, all underlying his civil conspiracy claim, accrued with the filing of the "spyware" suit on December 18, 2009. He states "that it is the filing of this lawsuit against him that brought into focus all these causes of action" and led, immediately, to the deterioration of his mental health, an inability to work, and the need for counseling and related assistance. Husband thus reasons that his causes of action were timely presented when he filed suit in the instant case on December 7, 2010. We disagree.

B.

In a previous section of this opinion, we concluded that the trial court correctly dismissed the fraud on the court claim for failure to state a claim for which relief can be granted. In further considering the claim, the trial court also found it to be time-barred, as follows:

[Wife] also argue[s] that if a fraud on the court action exists then the cause of action is barred by the one year time period contained in Rule 60.02. I agree.

All of the allegations, with the exception of the spyware case, occurred more than one year prior to the filing of this action on December [7],[4] 2010. The spyware case was filed on December 18, 2009.

[Husband] argue[s] that since this case was filed within one year of the filing of the spyware case that there is no statute of limitations issue, and furthermore, since Rule 60.02 does not contain a statute of limitation for fraud on the court, there is not a statute of limitations.

[Husband] argued that [he] may not have had or even realized that he had a proper cause of action because . . . the pieces of the conspiracy or the pieces of the scheme that had been put in place had not sufficiently come together to him as a cause of action. Once that spyware suit was filed, within one year . . . , [Husband] filed his complaint."

[Husband] insists that the spyware suit is an intricate part of the fraud on the court cause of action because [Wife] knew at the time of the divorce hearing that she had a cause of action against [Husband] for allegedly placing spyware on the computer she used. [Husband] argue[s], therefore, that she intentionally concealed this marital asset from the court.

I have difficulty understanding this argument. First, I question whether an intentional tort committed by one spouse against another spouse is a marital asset. Compare T.C.A. § 36-4-121(B)(1)(C) with T.C.A. § 36-4-121 (B)(2)(E). Assuming arguendo, the tort is a marital asset, [Husband] had to know that the cause of action existed because he is alleged to have created the cause of action.

_____

[4]It appears that the trial court inadvertently cited the date of the filing of the complaint as "December 10, 2010." The complaint is before us and reflects a filing date of December 7, 2010.

-20-

[Husband] denies that he committed the tort. If this is accurate, there is no cause of action and no concealment. If [Husband's] contention is incorrect, then he should not be allowed to take advantage of the wrong. *McCallie v. McCallie*, 719 S.W.2d 150 (Tenn. Ct. App. 1986).

[Counsel] continued his argument, "So [Husband] didn't discover that there had been a concealment until December 18, 2009, when the spyware lawsuit was filed. Only then did he know that his asset had been concealed. So the fraud had occurred earlier. Since no one knew there had been a fraud, including the court, this cause of action could not have arisen."

I conclude that on the face of the complaint that [Husband] knew more than one year prior to the filing of this action all the facts alleged, and the fraud on the court cause of action is barred by the one year statute of limitations.

(Underlining in original.)

In our view, the trial court's logical analysis of the timeliness of the fraud on the court action is exactly right. However, we find it unnecessary to explore this issue further, since we have concluded that no fraud on the court tort action exists. Husband's argument that such action was timely, either under Rule 60.02 itself and/or by virtue of the filing of the "spyware" case, is thereby rendered moot.

## C.

Lastly, the trial court found that the remaining underlying tort actions for abuse of process and intentional infliction of emotional distress were barred by the statute of limitations in Tenn. Code Ann. § 28-3-104. The court stated:

I conclude that the damages claimed for the abuse of process allegations are personal injuries in nature, and the one year statute of limitations of T.C.A. § 28-3-104 is applicable.

"... a cause of action for abuse of process has been generally held to accrue, and the statute of limitations to commence to run, from determination of the acts which constitute the abuse complained of, and not from the completion of the action in

which the process issued. 1 A.L.R.3d 953. . . " I find that the allegations . . . accrued more than one year prior to the filing of this action, and assuming arguendo, that [the allegations] state a cause of action for abuse of process, that it is barred by the statute of limitations.

I reject the argument that the filing of the spyware action was a triggering event that allowed [Husband] to discover his alleged claim for abuse of process. All the facts alleged in the spyware case were know by [Husband], or should have been known by [Husband], prior to the filing of the spyware case.

* * *

Both parties make the same arguments regarding the statute of limitations for the intentional infliction of emotional distress cause of action that they made regarding the abuse of process claim. During oral argument, [Husband's counsel] again argued that, "The question is when does the cause of action arise, and we still assert the triggering event to create the cause of action is the filing of the Spyware case, and it was well within the one year statute of limitations."

Again, all the facts alleged to support the claim of intentional infliction of emotional distress occurred within one year prior to the filing of the complaint, with the exception of the spyware case. It is my judgment that the complaint establishes that [Husband] was aware of all the facts prior to the filing of the spyware case, and the spyware case is not a triggering event which extends the statute of limitations.

To determine which statute of limitations applies to a particular claim, the court must look to the gravamen of the complaint. *Pera v. Kroger*, 674 S.W.2d 715, 719 (Tenn. 1984); *Keller v. Colgems-EMI Music, Inc*., 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996). "To determine the gravamen, 'or real purpose of an action, the court must look to the basis for which damages are sought.' " *Mize v. Consulo*, No. M2011-00455-COA-R3-CV, 2011 WL 6152980 at *2 (Tenn. Ct. App. M.S., filed Dec. 8, 2011) (citing *Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.,* 342 S.W.3d 19, 29 (Tenn. Ct. App. 2010)(quoting *Keller,* 924 S.W.2d at 359)). Stated differently, "the focal point for determining the gravamen is how the damages arose, i.e., causation." *Rubbermaid-Maryville, Inc. v. Barber & McMurray,*

***Inc.,*** No. 03A01-9309-CV-00327, 1994 WL 45315 at \*2 (Tenn. Ct. App. E.S., filed Feb. 15, 1994).

The remaining tort actions – for mental anguish and emotional damage – are certainly subject to the limitation period for claimed "injuries to the person" set forth in Tenn. Code Ann. § 28-3-104. The statutes mandates that such actions "shall be commenced within one year after the cause of action has accrued." ***Id; Whitsey v. Williamson County Bank***, 700 S.W.2d 562, 565 (Tenn. Ct. App. 1985)("The statutory limitation on actions for personal injury is one year. TCA § 28-3-104. This includes actions for mental anguish, regardless of the nature of the wrong which produced the injury"). Husband asserts that even assuming that a one-year statute of limitation applies, the discovery rule operates to start the running of the limitations period on December 18, 2009 – the date the "spyware" case was filed.

"The so-called 'discovery doctrine' was fashioned to alleviate the intolerable result of barring a cause of action by holding that it 'accrued' before the discovery of the injury or the wrong." ***Foster v. Harris***, 633 S.W.2d 304, 305 (Tenn. 1982). This Court has explained the application of the rule in the context of a tort action. We observed:

> In order to determine when a cause of action accrues, it is necessary to apply the discovery rule. Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.

***Steinbrunner v. Turner Funeral Homes, Inc***., No. E2001-00014-COA-R3-CV, 2002 WL 14088 at \*3 (Tenn. Ct. App. E.S., filed Jan. 2, 2002). The Supreme Court has explained that "[t]he discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action; it does not permit a plaintiff to wait until he knows all of the injurious effects and consequences of a tortious act." ***Potts v. Celotex Corp***., 796 S.W.2d 678, 680-81 (Tenn. 1990). Accordingly, the "statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred and, as a reasonable person is not put on inquiry." ***Id***.

Husband essentially argues that he has sustained injuries as a result of the tortious conduct of Defendants dating back to early 2008, but their "relentless acts of torture" only "brought into focus all these causes of action" when the "spyware" suit was filed. The complaint indicates that all of the conduct forming an abuse of process claim took place between April 2008 and October 2009, with the exception of the actual filing of the "spyware" case on December 18, 2009. As to the claim for intentional infliction of

emotional distress, the great majority of the complained-of actions by Wife (and Counsel) – obtaining a restraining order by false allegations, telling the children lies and forcing them to lie to Husband, violating various terms of the Agreed Order in the divorce (particularly failing to ensure the children's attendance at their sporting events), Wife's initiation of sexual encounters with Husband, having Husband arrested, and initiating their plan to gain access to his separate funds by launching their investigation into the eventual "spyware" case – took place during 2008 and 2009. Husband concedes that this "series of harassing and embarrassing events," standing alone, could not create a cause of action. To reiterate, it is his position that, taken together, they only became a cause of action with Wife's filing of the "spyware" suit.

Applying the limitations period in Tenn. Code Ann. § 28-3-104, the Supreme Court has observed that "a suit for personal injuries may be brought more than one year after the injury occurs, provided it is brought within one year after it is discovered or in the exercise of reasonable care and diligence should have been discovered." *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 493 (Tenn. 1975). The trial court found that the filing of the "spyware" suit did not trigger the running of the statute of limitations. We agree. Assuming that there was some merit to the suit, Husband cannot prevail because, as the perpetrator, Husband would always have been aware of any basis for the "spyware" suit. Moreover, Husband's assertion that he did not discover the Defendants' tortious conduct and the resulting injuries until "December 2009," when the "emotional toll" led him to leave his job and take temporary disability status, is not persuasive. The allegations state that the harassing, abusive conduct by Wife and Counsel go back at least to early 2008. We agree with the Defendants' contention that by December 2009, with or without the spyware suit, Husband had "already been injured. . . ."

Based on the foregoing, we conclude that the claims of abuse of process and intentional infliction of emotional distress are barred by the one-year statute of limitations applicable to tort actions for personal injury. The trial court correctly rejected Husband's position that pursuant to the "discovery rule," the cause of action did not accrue until the filing of the "spyware" case.

VII.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Edward Joseph Warwick, Sr. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE