# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 10, 2015 Session

## FREDRICO A. DIXON, III v. PATRICIA GRISSOM

**Interlocutory Appeal from the Chancery Court for Knox County**
**No. 183583-3     Michael W. Moyers, Chancellor**

---

**No. E2014-00947-COA-R9-CV-FILED-JUNE 12, 2015**

---

The dispute central to this interlocutory appeal involves a failed real estate transaction and alleged breach of a real estate agent's fiduciary duty to her client. The plaintiff buyer entered into an agreement to purchase improved real property from the seller but failed to obtain financing to complete the purchase. In a previous action brought by the seller against the buyer, the trial court found that the buyer's attempted termination of the contract was ineffective and that he therefore breached the contract. On appeal, this Court affirmed that judgment in favor of the seller. The buyer subsequently brought the instant action against the defendant real estate agent, alleging breach of fiduciary duty based on the agent's failure to confirm delivery of the buyer's credit declination letter to the seller. The agent filed a motion for summary judgment, averring that the buyer had filed this action outside the time parameters of the applicable statute of limitations. Following a hearing, the trial court applied the discovery rule to find that knowledge of the agent's alleged failure to terminate the contract could not be imputed to the buyer before April 22, 2010, when the seller's counsel had raised the issue during trial in the original action. Upon therefore determining that the buyer had commenced this action within the applicable three-year statute of limitations, the trial court denied the agent's motion for summary judgment. The agent sought permission to file an interlocutory appeal, which the trial court granted upon the certified issue of when the statute of limitations began to run. This Court subsequently granted permission for interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. We determine that the buyer knew or should have known that he had a potential cause of action against the agent by August 10, 2009, when he admittedly had knowledge of a facsimile transmission from the seller alleging that she had not received the termination documentation and demanding distribution to her of the seller's earnest money deposit. Having therefore determined that the statute of limitations began to run more than three years before the buyer commenced this action, we reverse the trial court's judgment and grant summary judgment in favor of the agent.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Jon G. Roach and Brian R. Bibb, Knoxville, Tennessee, for the appellant, Patricia Grissom.

James B. Johnson, Nashville, Tennessee, for the appellee, Fredrico A. Dixon, III.

**OPINION**

I. Factual and Procedural Background

On June 9, 2008, the plaintiff, Dr. Fredrico A. Dixon, III, entered into a "Purchase and Sale Agreement" ("the Agreement") to purchase improved real property and two adjoining unimproved land parcels from the seller, Elizabeth C. Wright, for the total price of $1,775,000. Upon execution of the Agreement, Dr. Dixon deposited earnest money in the amount of $20,000 with his real estate agent, the defendant, Patricia Grissom, and Realty Executives Associates, Inc. ("Realty Executives"), one of the brokerage companies with which Ms. Grissom was associated. The purchase was conditioned upon Dr. Dixon's ability to obtain a loan financing 100% of the purchase price by the agreed closing date of the transaction. Pursuant to the latest amendment to the Agreement, the closing date was set for June 27, 2008. Dr. Dixon subsequently failed to obtain a loan financing 100% of the purchase price and therefore sought to terminate the Agreement.

In a previous action brought by Ms. Wright against Dr. Dixon, the trial court found that Dr. Dixon's attempted termination of the contract was ineffective and that he therefore breached the contract. Ms. Wright had eventually sold the subject real property for an amount less than the purchase price to which Dr. Dixon had agreed. The trial court awarded Ms. Wright compensatory damages in the amount of $36,541.55 and attorney's fees in the amount of $43,280.76. Dr. Dixon appealed, and this Court affirmed the judgment. *See Wright v. Dixon*, No. E2012-00542-COA-R3-CV, 2012 WL 5954650 (Tenn. Ct. App. Nov. 29, 2012) ("*Wright II*"); *see also Wright v. Dixon*, No. E2010-01647-COA-R3-CV, 2011 WL 1648088 (Tenn. Ct. App. May 2, 2011) ("*Wright I*") (reversing the trial court's initial finding that Dr. Dixon had failed to make reasonable efforts to obtain 100% financing and remanding for a determination of whether Dr. Dixon effectively terminated the contract).

On August 22, 2012, Dr. Dixon filed the instant action, alleging that Ms. Grissom, as his real estate agent, breached her fiduciary duty to him. Dr. Dixon averred that Ms. Grissom failed to timely provide Ms. Wright with written documentation of SunTrust Bank's denial of financing to Dr. Dixon. Regarding the requirement that Dr. Dixon provide such documentation, the Agreement provides in pertinent part:

> This Agreement is conditioned upon Buyer's ability to obtain a loan(s) in the principal amount of 100% of the purchase price listed above . . . . In the event Buyer, having acted in good faith and in accordance with the terms below, is unable to obtain financing, Buyer may terminate this [A]greement by providing written notice and a copy of Lender's loan denial letter. Upon termination, Buyer is entitled to a refund of the Earnest Money.

> \* \* \*

> Should Buyer default hereunder, the Earnest Money shall be forfeited as damages to the Seller, and Seller may sue, in contract or tort, for additional damages or specific performance of the Agreement, or both. . . . In the event that any party hereto shall file suit for breach or enforcement of this Agreement . . . the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

> \* \* \*

> Time is of the essence of this Agreement.

> \* \* \*

> Except as otherwise provided herein, all notices and demands required or permitted hereunder shall be in writing and delivered either (1) in person, (2) by a prepaid overnight delivery service, (3) by facsimile transmission (FAX), (4) by the United States Postal Service, postage prepaid, registered or certified return receipt requested or (5) Email. NOTICE shall be deemed to have been given as of the date and time it is actually received. Receipt of notice by the real estate licensee or their Broker assisting a party as a client or customer shall be deemed to be notice to that party for all purposes under this Agreement as may be amended, unless otherwise provided in writing.

(Paragraph numbering and headings omitted.)

3

Although the instant action is separate from *Wright v. Dixon*, the factual and procedural background summarized in *Wright II* highlights the question at issue here. In relevant part, this Court summarized:

On remand [from *Wright I*], the parties and the court focused on whether the Seller received written notice of termination. The Seller testified that she did not receive a one-page fax dated June 27, 2008 ("the Alleged Fax"), which the Buyer's agent, Patricia Grissom ("the Agent"), claimed to have sent to the Seller's office fax machine. The Alleged Fax contains a handwritten note stating:

Elizabeth, The Dixon[s] are withdrawing from the . . . Agreement due to their financing falling through. Please see the Denial letter attached from SunTrust.

The Seller testified that, when she is absent from the office, faxes received during normal business hours are placed by administrative help in her physical office mailbox. Faxes received after office hours "would be sitting on the fax machine." The Seller did not arrive back in Knoxville from her family vacation until late Friday night. The Seller waited until early Saturday morning, June 28, to go to the office. There was no fax from the Agent either in her office mailbox or on the fax machine. On July 2, 2008, the Seller did receive a copy of the denial of credit document under a fax cover sheet misdated July 1, 2008. *The Seller testified that the first time she saw the Alleged Fax was after the first trial.*

The Agent testified that she called the Seller on June 27 and informed her that the Buyer had not been able to obtain financing and that he was terminating the Agreement. She also asked her assistant, Tessa Moore, to send the Seller a fax dated June 27, 2008, as well as the letter from SunTrust denying financing. The Agent's "personal" file contained the Alleged Fax, with a handwritten confirmation by Tessa Moore that it was sent. The Agent testified that, when the Seller said that she did not receive the Alleged Fax she resent the denial of financing document on either July 1 or July 2. On cross-examination the Agent admitted that she had received a subpoena to appear at the first trial and bring with her all documents pertaining to the termination. The documents she produced at the first trial did not include the Alleged Fax. The Agent testified that she met with the Buyer's attorney before trial and gave him the office file. According to the Agent, it was after the first trial that she searched her

4

*personal* files and found the Alleged Fax. The Agent testified that it was after the first trial that she realized the Seller was claiming that she did not receive the Alleged Fax. This prompted her to search her personal files.

*Wright II*, 2012 WL 5954650 at *2 (italicized emphasis in original). In affirming the trial court's ruling, this Court determined that the evidence did not preponderate against "the trial court's finding that the termination document was not received on the closing date." *Id.* at *4. This Court further noted: "We agree with the trial court that, in a transaction involving a million dollar piece of property, it is 'inconceivable' that if the fax had truly gone through, the Agent would not have provided the machine printed confirmation of transmission." *Id.*

Although Dr. Dixon filed his complaint against Ms. Grissom on August 22, 2012, it is undisputed that summons were not issued upon Ms. Grissom and the other defendants until January 7, 2013. The other defendants originally included Realty Executives and another brokerage entity, Debbie Elliott Sexton, LLC f/k/a Debbie Elliott and Associates ("Debbie Elliott"). All of the defendants filed one motion for summary judgment on September 5, 2013. Following a hearing, the trial court granted summary judgment in favor of Realty Executives and Debbie Elliott upon its determinations that Ms. Grissom was an independent contractor and that the other defendants were not vicariously liable for her actions. The trial court entered an order to this effect on December 20, 2013. Realty Executive Associates and Debbie Elliott are not parties to this appeal.

Ms. Grissom argued in her motion for summary judgment that Dr. Dixon's claim against her was barred by the applicable statute of limitations. It is undisputed that the three-year statute of limitations provided by Tennessee Code Annotated § 28-3-105(1) (Supp. 2014) for injuries to personal property applies to Dr. Dixon's claim for breach of fiduciary duty against Ms. Grissom. At the close of the December 2013 hearing, the trial court reserved ruling on Ms. Grissom's motion for summary judgment and requested briefing from the parties on the issue of whether and when knowledge of Ms. Grissom's alleged failure to terminate the contract could be imputed to Dr. Dixon and thus commence the running of the statute of limitations pursuant to the discovery rule. *See PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 544 (Tenn. Ct. App. 2012) ("Under the discovery rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.").

In its remarks voiced upon the conclusion of the December 2013 hearing, the trial court identified three events as possibly beginning the applicable limitation period.

5

These events and corresponding dates are as follows:

- August 12, 2008: The date that Ms. Wright filed her complaint against Dr. Dixon in the first action.

- August 10, 2009: The date that Dr. Dixon filed a "Statement of Material Facts" in *Wright v. Dixon* that included acknowledgment of the June 28, 2008 facsimile transmission received by Ms. Grissom in which Ms. Wright stated that she had not received a copy of the Lender's declination letter. Ms. Wright had attached to this transmission an earnest money distribution form demanding that the $20,000 in earnest money be distributed to her.

- April 22, 2010: The date of trial when Ms. Wright's counsel stated to the acknowledged surprise of the trial court: "Your Honor, I think the pivotal issue in this case is did [Dr. Dixon] properly terminate the contract?"

The latest date, April 22, 2010, is the only one that is within the three-year limitation period.

Ms. Grissom filed a supplemental brief on January 15, 2014, and Dr. Dixon subsequently filed a response on March 6, 2014. Following a hearing, the trial court denied Ms. Grissom's motion for summary judgment in an order entered April 8, 2014. Specifically, the court found that the three-year statute of limitations began to run when "Elizabeth Wright alleged for the first time during the April 22, 2010 trial that Dr. Dixon failed to properly terminate the contract at issue." The court therefore found that "whether measured by the filing of the Complaint or the date that process was issued," Dr. Dixon's action against Ms. Grissom was timely filed.

Ms. Grissom filed a motion for a Tennessee Rule of Appellate Procedure 9 interlocutory appeal on April 14, 2014. In an order entered May 15, 2014, the trial court granted the motion, certifying the issue for review as "whether the statute of limitations, Tenn. Code Ann. § 28-3-105 bars the present action." The court further clarified the issue as whether the statute of limitations began running "as early as August 12, 2008, but in no event later than August 10, 2009," or "only as of the April 22, 2010 trial in [*Wright v. Dixon*] when the plaintiff advanced at trial that Dr. Dixon had not properly terminated the Purchase and Sale Agreement." This Court subsequently granted permission for an interlocutory appeal in an order entered September 12, 2014.

6

## II. Issue Presented

Pursuant to Tennessee Rule of Appellate Procedure 9, "we are limited on appeal to the questions certified by the trial court in its order granting permission to seek an interlocutory appeal and in this Court's order granting the appeal." *In re Bridgestone/Firestone & Ford Motor Co. Litig.*, 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008). As noted above, the trial court in its order granting permission for interlocutory appeal briefly stated the certified issue and then further clarified the issue. We have consolidated and restated slightly the sole issue certified by the trial court for this interlocutory appeal as follows:

> Whether, pursuant to the discovery rule, the applicable three-year statute of limitations provided by Tennessee Code Annotated § 28-3-105 began running no later than August 10, 2009, and so bars the present action, or only as of the April 22, 2010 trial in *Wright I*, and therefore does not bar the present action.

## III. Standard of Review

For actions initiated on or after July 1, 2011, such as the one at bar, the standard of review for summary judgment delineated in Tennessee Code Annotated § 20-16-101 (Supp. 2013) applies. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011). The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1)     Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2)     Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.[1]

---

[1]As this Court has explained:

> Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan* [*v. Alltell Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)], which permitted a trial court to grant summary judgment only if the moving party could either (1)

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). "A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Dick Broad. Co.*, 395 S.W.3d at 671 (citing Tenn. R. Civ. P. 56.04; *Hannan v. Alltell Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Statute of Limitations Period Pursuant to Discovery Rule

Ms. Grissom contends that the trial court erred by dismissing her motion for summary judgment because this action is barred by application of the three-year statute of limitations. She argues that Dr. Dixon knew or should have known that he had a potential claim against Ms. Grissom when Ms. Wright filed a complaint against him on August 12, 2008, or in the alternative, no later than August 10, 2009, when Dr. Dixon acknowledged discovery of Ms. Wright's June 28, 2008 facsimile transmission to Ms. Grissom. Dr. Dixon asserts that the trial court properly found that he could not have discovered the injury allegedly caused by Ms. Grissom prior to April 22, 2010, during the original trial testimony in *Wright v. Dixon*. We conclude that Dr. Dixon knew or should have known that he had a potential cause of action against Ms. Grissom no later than August 10, 2009, when he filed a statement of material facts in *Wright v. Dixon* with a copy of the first page of the June 28, 2008 facsimile transmission attached. Having determined that the three-year statute of limitations began to run more than three years before Dr. Dixon filed this action on August 22, 2012, we further determine that the action is barred by the statute of limitations and that the trial court therefore erred by denying Ms. Grissom's motion for summary judgment.

---

affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

*Walker v. Bradley County Gov't*, No. E2013-01053-COA-R3-CV, 2014 WL 1493193 at *3 n.3 (Tenn. Ct. App. Apr. 15, 2014). *See also Sykes*, 343 S.W.3d at 25 n.2.

It is undisputed that the applicable statute of limitations for this action alleging economic injury through breach of fiduciary duty is three years. *See* Tenn. Code Ann. § 28-3-105(1) (Supp. 2014) (providing that actions alleging injury to personal property "shall be commenced within three (3) years from the accruing of the cause of action."); *see also Keller v. Colgems—EMI Music, Inc.*, 924 S.W.2d 357, 361 (Tenn. Ct. App. 1996) (concluding that "an economic loss . . . which is a consequence of property damage is within the three year statute found in Tenn. Code Ann. 28-3-105."). The issue certified for interlocutory review concerns the date when the three-year limitation period began to run.

The trial court applied the discovery rule to determine when Dr. Dixon knew or should have known that he suffered an injury due to Ms. Grissom's failure to ensure timely delivery of the loan declination letter. *See McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975) (establishing the discovery rule for tort actions and explaining that in such actions, "the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."); *see also Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) ("[W]here applicable, the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained."). Ms. Grissom does not dispute the trial court's decision to apply the discovery rule, and we determine such application to be proper under the circumstances of this action.

Pursuant to the discovery rule, "the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry." *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680-81 (Tenn. 1990). As this Court has explained:

> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. *Carvell* [*v. Bottoms*], 900 S.W.2d [23,] 29 [(Tenn. 1995)]. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant [attorney] admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. *Id.* Our Supreme Court has

9

stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. *Shadrick* [*v. Coker*], 963 S.W.2d [726,] 733 [(Tenn. 1998)]. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury* [v. Bacardi], 953 S.W.2d [671,] 678 [(Tenn. 1997)]. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. *Shadrick*, 963 S.W.2d at 733; *Wyatt v. A-Best Company*, 910 S.W.2d 851, 855 (Tenn. 1995). Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims. *Wyatt*, 910 S.W.2d at 855.

*PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 387 S.W.3d at 545. In addition, "a cause of action in tort does not exist until a judicial remedy is available to the plaintiff," including "(1) a breach of some legally recognized duty owed by the defendant to the plaintiff and (2) some legally cognizable damage caused to the plaintiff by the breach of duty."). *Potts*, 796 S.W.2d at 681.

In its order denying summary judgment, the trial court stated the following findings in relevant part:

Specifically, this Court having participated in two previous trials which ultimately resulted in the filing of this case, finds that prior to April 22, 2010, the totality of the facts were insufficient to place a reasonable person on inquiry or actual notice that a potential cause of action existed against Ms. Grissom until Elizabeth Wright alleged for the first time during the April 22, 2010 trial that Dr. Dixon failed to properly terminate the contract at issue.

Furthermore, this Court finds that the three year statute of limitations began to run on April 22, 2010 and that Dr. Dixon's case in this matter, whether measured by the filing of the Complaint or the date that process was issued, was timely filed.

10

Dr. Dixon attached to his response to the motion for summary judgment an excerpt of the transcript from the trial in *Wright v. Dixon* on April 22, 2010. This excerpt demonstrates that the following exchange occurred during the trial:

[Ms. Wright's Counsel]: Your Honor, I think the pivotal issue in this case is did he properly ever terminate the contract? Patricia Grissom has testified, with absolutely no documentary evidence to support her intention whatsoever, that she faxed the declination letter on June 27th. There's nothing to support that whatsoever.

The Court: Let's assume that it was on July 1st. What does that mean?

[Ms. Wright's Counsel]: That means that it's outside – it's not effective. It's past the closing date. The closing date under the contract was June 27 by virtue of the closing date possession . . . .

(Ellipsis indicates end of excerpt.) Dr. Dixon asserts that the trial court correctly found the above statement made by Ms. Wright's counsel on April 22, 2010, to be the triggering event that placed Dr. Dixon on notice that he had suffered an injury due to Ms. Grissom's alleged breach of fiduciary duty. We disagree.

Ms. Grissom's contention that the statute of limitations bars this action is based on her assertion that Dr. Dixon discovered his alleged injury on one of two dates that would place the filing of the instant action beyond the statute of limitations period. First, Ms. Grissom argues that the filing of Ms. Wright's complaint against Dr. Dixon on August 13, 2008, operated as notice that Ms. Grissom may have failed to properly terminate the contract. Second, Ms. Grissom argues that at least by the date of Dr. Dixon's discovery of the June 28, 2008 facsimile from Ms. Wright to Ms. Grissom, Dr. Dixon knew that Ms. Grissom's alleged failure to timely deliver the loan declination letter in writing could result in a ruling that he had failed to properly terminate the Agreement. It is undisputed that Dr. Dixon had opportunity to review at least the first page of the facsimile transmission at issue by August 10, 2009, when he filed his statement of material facts in *Wright v. Dixon*. We will address each of these proposed dates for the commencement of the limitations period in turn.

As a threshold matter, we note that Ms. Grissom presents an argument regarding whether the limitation period was tolled by commencement of the action when Dr. Dixon

filed the complaint on August 22, 2012, or when he caused summons to be issued on January 7, 2013. *See, e.g., Jones v. Vasu*, 326 S.W.3d 577, 577-81 (Tenn. Ct. App. 2010) (concluding that the plaintiff's counsel's intentional "delay of prompt service of process rendered the filing of the complaint ineffective to commence the action and stop the running of the statute of limitations" pursuant to Tennessee Rule of Civil Procedure 4.01(3)). We determine Ms. Grissom's tolling argument to be moot, as did the trial court. Both of the two earlier dates set forth by Ms. Grissom as the beginning of the limitations period occurred more than three years before Dr. Dixon filed his complaint. Moreover, the later date proposed by Dr. Dixon occurred within three years of both the filing of the complaint and the issuance of summons.

Ms. Grissom first argues that Dr. Dixon was placed on constructive notice of his alleged injury on August 13, 2008, when Ms. Wright filed her original complaint alleging that Dr. Dixon had breached the Agreement. During the December 16, 2013 hearing on Ms. Grissom's motion for summary judgment, the trial court repeatedly questioned Ms. Grissom's counsel regarding whether the 2008 complaint alleged that Dr. Dixon had failed to properly terminate the contract. Through her counsel, Ms. Grissom argued, as she does on appeal, that Ms. Wright's allegation that Dr. Dixon had breached the Agreement operated as constructive notice to Dr. Dixon that he was accused of breaching individual requirements within the Agreement, including the requirement that Ms. Wright receive a loan declination letter by the established deadline to effectuate termination of the Agreement. At the close of the hearing, the trial court found that Dr. Dixon was not placed on constructive notice "simply because of the lawsuit being filed, because it was not sufficiently clear." As the trial court noted, an allegation of failure to terminate the Agreement was not raised specifically in the complaint, during discovery, or in any pretrial motion. In her "Trial Brief," Ms. Wright also did not raise an allegation of failure to properly terminate the Agreement.[1]

In the August 2008 complaint, Ms. Wright first identified the essential facts underlying the Agreement. She then alleged the following against Dr. Dixon:

> The Contract provided for a closing date of June 13, 2008. The closing date was subsequently extended by amendment to June 20, 2008. Thereafter, [Dr. Dixon] failed and refused to close on the Contract and failed and refused to provide his mortgage broker with necessary and requested financial information to process his loan application.
>
> [Ms. Wright] has complied with all contingencies of the Contract and is ready, willing and able to close on the purchase of the Subject

---

[1] Copies of Ms. Wright's complaint and trial brief are included in the record before us as attachments to Dr. Dixon's response to Ms. Grissom's undisputed facts.

Property. [Dr. Dixon] has breached the Contract by failing to timely pursue financing, refusing to close on the Contract and accept conveyance of the Subject Property by [Ms. Wright], and failing to release the earnest money deposit to [Ms. Wright].

Due to the unique characteristics of real property in general, [Ms. Wright] cannot be adequately compensated with monetary damages and therefore seek[s] an Order for specific performance of the Contract.

In the alternative, [Ms. Wright] avers that as a result of the breach of the Contract by [Dr. Dixon], [Dr. Dixon] is liable to [Ms. Wright] for compensatory and special damages resulting therefrom, together with attorney's fees as provided by the Contract.

(Paragraph numbering omitted.)

Ms. Wright's complaint delineated four specific ways in which Dr. Dixon was alleged to have breached the Agreement "by failing to timely pursue financing, refusing to close on the Contract and accept conveyance of the Subject Property by [Ms. Wright], and failing to release the earnest money deposit to Ms. Wright." In contrast to these specific allegations, Ms. Wright's complaint omitted any specific allegation that Dr. Dixon had breached the Agreement by failing to properly terminate it. We agree with the trial court that the breach of contract allegation contained within Ms. Wright's complaint was insufficient to operate as constructive notice to Dr. Dixon that he had suffered an injury through his agent's failure to ensure timely delivery of the declination letter.

We do, however, find Ms. Grissom's second argument regarding August 10, 2009, to be persuasive. On August 10, 2009, Dr. Dixon filed a statement of material facts in *Wright v. Dixon*. This filing included a description of the June 28, 2008 facsimile transmission from Ms. Wright to Ms. Grissom with a copy of the transmission's first page attached. Under the heading, "Comments," on the first page of the facsimile transmission, Ms. Wright had handwritten the following:

Earnest Money Disbursement Form in this fax

Patricia –
    I did not receive a fax at the office of the denial letter from lender you spoke of yesterday. I also did not receive the signed copy of Closing Date/Possession Date Amendment #2 that you said you would fax on Friday, June 20th.
                                                    — Elizabeth

13

The entire facsimile transmission from Ms. Wright to Ms. Grissom is attached as an exhibit to Ms. Grissom's motion for summary judgment in the instant action. Ms. Wright had attached to the transmission a form, also dated June 28, 2008, in which she requested disbursement of the $20,000 earnest money to her. On the form, entitled "Earnest Money Disbursement and Mutual Release of Purchase and Sale Agreement," Ms. Wright had checked a box indicating: "EARNEST MONEY IS BEING DISBURSED AS FOLLOWS . . . Forfeited by the Buyer(s) and paid to the Seller(s) as defined in the Purchase and Sale Agreement." Regarding distribution of the earnest money, the referenced Agreement states in relevant part:

> In the event Buyer, having acted in good faith and in accordance with the terms below, is unable to obtain financing, <u>Buyer may terminate this [A]greement by providing written notice and a copy of Lender's loan denial letter. Upon termination, Buyer is entitled to a refund of the Earnest Money</u>.
>
> * * *
>
> <u>Should Buyer default hereunder, the Earnest Money shall be forfeited as damages to the Seller</u>, and Seller may sue, in contract or tort, for additional damages or specific performance of the Agreement, or both.

(Emphasis added.)

Pursuant to the Agreement, Ms. Wright was entitled to demand disbursement of the earnest money deposit to her for any default of the Agreement committed by Dr. Dixon. The juxtaposition, however, of the disbursement demand with Ms. Wright's message that she had not received the declination letter indicates that the two were connected. Clearly, a "Buyer," in this case Dr. Dixon, receiving Ms. Wright's June 28, 2008 facsimile transmission and disbursement demand would have actual knowledge that Ms. Wright claimed not to have received the loan declination letter by the June 27, 2008 deadline. We further determine that Dr. Dixon, having previously entered into the Agreement referenced in the disbursement demand, would have been placed on constructive notice by this facsimile transmission that Ms. Wright considered the failure to timely deliver the declination letter to be a default warranting forfeiture of the earnest money deposit. We note that Dr. Dixon testified through deposition that he read the Agreement before signing it and would nonetheless be chargeable with knowledge of its contents. *See Sikora v. Vanderploeg*, 212 S.W.3d 277, 290 (Tenn. Ct. App. 2006) ("[P]arties have a duty to read the written contracts they enter into and are ordinarily

14

chargeable with knowledge of their contents regardless of whether they have actually read them.").

Dr. Dixon testified through deposition that although he had known that Ms. Wright requested an earnest money disbursement in June 2008, he first learned of the existence of Ms. Wright's June 28, 2008 facsimile message stating that she had not received the declination letter when he appeared in court on April 22, 2010. However, through his filing of the statement of material facts on August 10, 2009, Dr. Dixon asserted knowledge of, at the very least, the first page of this message, which included the juxtaposition of the statement, "Earnest money disbursement form in this fax," alongside Ms. Wright's claim that she had not received the loan declination letter by the closing date of June 27, 2008. On appeal, Dr. Dixon concedes that "[i]n August 2009, Dr. Dixon discovered the June 28, 2008 fax that Ms. Grissom received from Ms. Wright stating that she had not received a copy of the Lender's declination letter."

During the December 2013 hearing on the instant summary judgment motion and on appeal, Dr. Dixon has asserted that acting through counsel, he conducted an inquiry in August 2009 in response to discovery of Ms. Wright's June 2008 facsimile. He maintains that through this inquiry, he was satisfied at the time that no reasonable person in his position would have had a cause of action against Ms. Grissom. Upon his inquiry, Dr. Dixon learned that (1) Ms. Wright's complaint against Dr. Dixon did not allege improper termination through failure to send the loan declination letter; (2) Ms. Grissom did fax the loan declination letter to Ms. Wright three days after the deadline on July 1, 2008; and (3) Ms. Grissom maintained that her assistant had in fact faxed the loan declination letter to Ms. Wright within the deadline on June 27, 2008. As this Court noted in *Wright II*, however, Ms. Grissom failed to produce at any time a "machine printed confirmation of transmission" on June 27, 2008. *See Wright II*, 2012 WL 5954650 at *4. Dr. Dixon clearly acknowledges that his review of the June 28, 2008 facsimile transmission from Ms. Wright to Ms. Grissom in August 2009 caused him to inquire into whether Ms. Grissom had effectively delivered the loan declination letter. Dr. Dixon's inquiry revealed the same lack of documentation that he now alleges was a breach of his real estate agent's fiduciary duty to him. *See, e.g., Dennison v. Overton*, No. E2013-02290-COA-R3-CV, 2014 WL 4180810 at *7-8 (Tenn. Ct. App. Aug. 25, 2014) (explaining that a client's constructive notice of an attorney's breach of duty is not eradicated by the attorney's assurance that the resulting injury can be corrected).

Finally, we recognize that when the trial court requested that the parties brief the issue of when the applicable limitations period began to run, the court had concluded that knowledge of the alleged injury could be imputed to Dr. Dixon prior to April 22, 2010, only if it were possible for such knowledge to be imputed through the agency relationship between real estate licensee and client. *See* Tenn. Code Ann. § 62-13-402(a) (2009) ("If

a real estate licensee is engaged as an agent, the real estate licensee serves as a limited agent retained to provide real estate services to a client."); -402(c) (2009) ("Notwithstanding any law to the contrary, the duties enumerated in §§ 62-13-403 [Duties owed to all parties] and 62-13-404 [Duties owed to licensee's client] shall supersede any fiduciary or common law duties owed by a licensee to the licensee's client on January 1, 1996."). Having determined, however, that Dr. Dixon conceded his knowledge of Ms. Wright's June 28, 2008 facsimile message by August 10, 2009, we further determine that the issue of knowledge imputed by agency is pretermitted as moot.

Upon a careful and thorough review of the record, we conclude that Dr. Dixon was placed on constructive notice of his alleged injury by at least August 10, 2009, and that this constructive notice caused the running of the limitations period to begin. This action is therefore barred by the three-year statute of limitations provided by Tennessee Code Annotated § 28-3-105. Accordingly, we reverse the trial court's denial of Ms. Grissom's motion for summary judgment.

## V. Conclusion

For the reasons stated above, we reverse the trial court's judgment denying Ms. Grissom's motion for summary judgment and grant summary judgment in favor of Ms. Grissom. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below. Costs on appeal are taxed to the appellee, Fredrico A. Dixon, III.

_____
THOMAS R. FRIERSON, II, JUDGE

16